1579 1338

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published In The Wall Street Journal)-Rate Caps)

MIN: 1000342-0000158671-2      Loan Number 15003171

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

JULY 14, 2003          ENCINO          CALIFORNIA
[Date]                [City]               [State]

5631 FOOTHILL DRIVE , AGOURA HILLS, CALIFORNIA 91301 -
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 388,000.00      (this amount is called "Principal"), plus interest, to the order of Lender. Lender is METROCITI MORTGAGE LLC DBA NO RED TAPE HOME LOAN, A LIMITED LIABILITY COMPANY
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      4.625 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on SEPTEMBER 1 , 2003 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on AUGUST 1 , 2033 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 16030 VENTURA BLVD., 4TH FLOOR, ENCINO, CALIFORNIA 91436

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,994.86      . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the 1st day of AUGUST      ,2008 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

EXHIBITSp000001

**(B)    The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)    Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000                         percentage points (       2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)    Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    10.625 % or less than       2.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than    TWO AND    000/1000                         percentage point(s) (       2.000 %) from the rate of interest I have been paying for the preceding   6             months. My interest rate will never be greater than         10.625 %.

**(E)    Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)    Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.  BORROWER'S RIGHT TO PREPAY ** \*\* See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded

EXHIBITSp000002

to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how

EXHIBITSp000003

Us35203.not

and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if : (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.



_____ (Seal)                           _____ (Seal)
JOHN MANOS                           -Borrower                                                     -Borrower

_____ (Seal)                           _____ (Seal)
                                     -Borrower                                                     -Borrower

_____ (Seal)                           _____ (Seal)
                                     -Borrower                                                     -Borrower

[Sign Original Only]

MULTISTATE ADJUSTABLE RATE NOTE–LIBOR SIX-MONTH INDEX(AS PUBLISHED IN THE WALL STREET JOURNAL)--
Single Family--Fannie Mae Modified Instrument          Page 4 of 4                          Form 3520 1/01
Document Systems, Inc. (800) 649-1362

EXHIBITSp000004

WITHOUT RECOURSE, PAY TO THE ORDER OF

LEHMAN BROTHERS BANK, FSB

METROCITI MORTGAGE LLC
DBA NO RED TAPE HOME LOAN

BY:

C. J. WYATT, A.V.P.

PAY TO THE ORDER OF
LEHMAN BROTHERS HOLDINGS INC.
WITHOUT RECOURSE
LEHMAN BROTHERS BANK, FSB

BY:

RICK W. SKOGG
VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
LEHMAN BROTHERS HOLDINGS INC.

BY:

RALPH A. LENZI III
AUTHORIZED SIGNATORY

EXHIBITSp000005

# FIDELITY-VAN NUYS

Recording Requested By:
METROCITI MORTGAGE LLC DBA NO RED
TAPE HOME LOAN

**03 2161272**

And After Recording Return To:
METROCITI MORTGAGE LLC DBA NO RED
TAPE HOME LOAN
16030 VENTURA BLVD., 4TH FLOOR
ENCINO, CALIFORNIA 91436

[handwritten: 9.260 D6067] ——————[Space Above This Line For Recording Data]——————

Loan Number: 15003171    **DEED OF TRUST**

**MIN:** 1000342-0000158671-2

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11,
13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "**Security Instrument**" means this document, which is dated    JULY 14, 2003    , together
with all Riders to this document.
**(B)** "**Borrower**" is JOHN MANOS, AN UNMARRIED MAN

Borrower is the trustor under this Security Instrument.
**(C)** "**Lender**" is METROCITI MORTGAGE LLC DBA NO RED TAPE HOME LOAN

Lender is a LIMITED LIABILITY COMPANY    organized
and existing under the laws of    DELAWARE
Lender's address is  16030 VENTURA BLVD., 4TH FLOOR, ENCINO, CALIFORNIA
91436
**(D)** "**Trustee**" is FIDELITY NATIONAL LOAN PORTFOLIO SOLUTIONS, A
CALIFORNIA CORPORATION

**(E)** "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security
Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number
of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F)** "**Note**" means the promissory note signed by Borrower and dated    JULY 14, 2003
The Note states that Borrower owes Lender    THREE HUNDRED EIGHTY EIGHT
THOUSAND AND 00/100        Dollars (U.S. $ 388,000.00    ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
AUGUST 1, 2033

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                           Page 1 of 13

*DocMagic EFRorms* 800-649-1362
www.docmagic.com
EXHIBITSp000006

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider

☐ Balloon Rider ☐ Planned Unit Development Rider ☒ Other(s) [specify]

☒ 1-4 Family Rider ☐ Biweekly Payment Rider Addendum to Adjustable Rider, Prepayment Rider

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY of LOS ANGELES
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

03
2161272

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 2 of 13

*DocMagic* 800-649-1362
www.docmagic.com

EXHIBITSp000007

LOT 8 OF BLOCK 11, TRACT NO. 8451, IN THE CITY OF AGOURA HILLS,
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED
IN BOOK 104 PAGES(S) 79-90 INCLUSIVE OF MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY.
A.P.N. #: 2055-018-022

which currently has the address of   5631 FOOTHILL DRIVE
                                                                            [Street]
AGOURA HILLS                                              , California 91301            ("Property Address"):
                          [City]                                             [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security
Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors
and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose
and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling
this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right
to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants
with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower
shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and
late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments
due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other
instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid,
Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in
one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,
treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured
by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
Payments are deemed received by Lender when received at the location designated in the Note or at such other
location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return
any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender
may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights
hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not
obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of
its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds
until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of
time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be

03  2161272

EXHIBITSp000008

applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree

Ca3005A.mzd
EXHIBITSp000009

in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal

*DocMagic eForms* 800-649-1362
www.docmagic.com

Cx30055.mzd

EXHIBITSp000010

notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

EXHIBITSp000011

Cs30056.mxd

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share

DocMagic 800-649-1362
www.docmagic.com

Ca30057.mzd

EXHIBITSp000012

of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

03 2161272

EXHIBITSp000013

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

EXHIBIT5p000014

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 10 of 13

DocMagic *eForms* 800-649-1362
www.docmagic.com

Ca3005I0.mzd

EXHIBITSp000015

12

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall

Ca300511.mzd                                                                 EXHIBITSp000016

13

cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
JOHN MANOS            -Borrower

_____ (Seal)
                     -Borrower

_____ (Seal)
                     -Borrower

_____ (Seal)
                     -Borrower

_____ (Seal)
                     -Borrower

_____ (Seal)
                     -Borrower

Witness:                          Witness:

_____                   _____

03 2161272

DocMagic *eForms* 800-649-1362
www.docmagic.com

Cx300512.nzd                                              EXHIBITSp000017

14

State of California       )
                             ) ss.

County of  LOS  ANGELES    )

On JVLY 18, 2003      before me,  LORI LYNN SEMOLICH

personally appeared   JOHN MANOS

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



LORI LYNN SEMOLICH
Commission # 1254945
Notary Public - California
Ventura County
My Comm. Expires Feb 27, 2004

NOTARY SEAL

_LOOILYNN SEMOLICH_
NOTARY SIGNATURE

_LORI  LYNN  SEMOLICH_
(Typed Name of Notary)

03 2161272

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                         Page 13 of 13            DocMagic 800-649-1362
www.docmagic.com

EXHIBITSp000018

*15*

Loan Number: 15003171

# ADJUSTABLE RATE RIDER
## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 14th day of     JULY              ,
2003   , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower")
to secure Borrower's Adjustable Rate Note (the "Note") to    METROCITI MORTGAGE LLC
 DBA NO RED TAPE HOME LOAN, A LIMITED LIABILITY COMPANY
("Lender") of the same date and covering the property described in the Security Instrument and located at:

5631 FOOTHILL DRIVE , AGOURA HILLS, CALIFORNIA 91301
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN
THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE
LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE
AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST
PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of     4.625   %. The Note provides for changes
in the interest rate and the monthly payments, as follows:

## 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A)    Change Dates
The interest rate I will pay may change on the    1st day of AUGUST, 2008           ,
and on that day every  6     month thereafter. Each date on which my interest rate could change is called
a "Change Date."
### (B)    The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
### (C)    Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO AND 250/1000              percentage points (    2.250 %) to the Current
Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one
percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be
my new interest rate until the next Change Date.

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3136 1/01                          Page 1 of 3

DocMagic €*Forms 800-649-1362
www.docmagic.com

03 2161272

U03381.rid

EXHIBITSp000019

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)    Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    10.625% or less than    2.250    %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than    TWO AND 000/1000    percentage points (    2.000    %) from the rate of interest I have been paying for the preceding 6    months. My interest rate will never be greater than    10.625 %.

**(E)    Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)    Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                    Page 2 of 3

*DocMagic eForms* 800-649-1362
www.docmagic.com

03  216127c

EXHIBITSp000020

1/7

If Lender exercises the option to require immediate payment in full, Lender shall give
Borrower notice of acceleration. The notice shall provide a period of not less than 30 days
from the date the notice is given in accordance with Section 15 within which Borrower must
pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to
the expiration of this period, Lender may invoke any remedies permitted by this Security
Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
JOHN MANOS                    -Borrower                                      -Borrower


_____ (Seal)          _____ (Seal)
                              -Borrower                                      -Borrower


_____ (Seal)          _____ (Seal)
                              -Borrower                                      -Borrower

MULTISTATE ADJUSTABLE RATE RIDER—LIBOR SIX-MONTH INDEX          DocMagic €Forms 800-649-1362
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)                              www.docmagic.com
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                        Page 3 of 3

Us31383.rid

EXHIBITSp000021

7/29/03

*18*

Loan Number: 15003171

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 14th day of JULY 2003 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to METROCITI MORTGAGE LLC DBA NO RED TAPE HOME
LOAN
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

5631 FOOTHILL DRIVE, AGOURA HILLS, CALIFORNIA 91301
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY
INSTRUMENT.** In addition to the Property described in Security Instrument, the following
items now or hereafter attached to the Property to the extent they are fixtures are added to the
Property description, and shall also constitute the Property covered by the Security Instrument:
building materials, appliances and goods of every nature whatsoever now or hereafter located
in, on, or used, or intended to be used in connection with the Property, including, but not
limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas,
water, air and light, fire prevention and extinguishing apparatus, security and access control
apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors,
screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and
attached floor coverings, all of which, including replacements and additions thereto, shall be
deemed to be and remain a part of the Property covered by the Security Instrument. All of the
foregoing together with the Property described in the Security Instrument (or the leasehold
estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and
the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek,
agree to or make a change in the use of the Property or its zoning classification, unless Lender
has agreed in writing to the change. Borrower shall comply with all laws, ordinances,
regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not
allow any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                          Page 1 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

03 2161272

Us31701.rid

EXHIBITSp000022

*19*

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

03 216 1272

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01

Page 2 of 3

*DocMagic eForms 800-649-1362*
*www.docmagic.com*

Us31702.rid

EXHIBITSp000023

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement In which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.



_____ (Seal)
JOHN MANOS          -Borrower

_____ (Seal)
                    -Borrower

_____ (Seal)
                    -Borrower

_____ (Seal)
                    -Borrower

_____ (Seal)
                    -Borrower

_____ (Seal)
                    -Borrower

03 2161272

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                    Page 3 of 3

DocMagic €Farms 800-649-1362
www.docmagic.com

Us31703.rid

EXHIBITSp000024

Loan Number: 15003171

# ADDENDUM TO ADJUSTABLE RATE RIDER

This addendum is made JULY 14, 2003 and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
5631 FOOTHILL DRIVE, AGOURA HILLS, CALIFORNIA 91301

## AMENDED PROVISIONS

In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

## ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.625 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000 percentage point(s) ( 2.000 %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than 10.625 %. My interest rate will never be less than 2.250 %.

## TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

DocMagic ☎ Forms 800-649-1362
www.docmagic.com

03 2161272

EXHIBITSp000025

In Witness Thereof, Trustor has executed this addendum.

Witness

Borrower Signature JOHN  MANOS          Date

Borrower Signature          Date

Borrower Signature          Date

Borrower Signature          Date

Borrower Signature          Date

Borrower Signature          Date

LIBOR ADDENDUM TO ADJUSTABLE RATE RIDER
FORM 1202 1-01                              Page 2 of 2

DocMagic *CForms* 800-649-1362
www.docmagic.com

1202.sis-2.tem

EXHIBITSp000026

*13*

Loan Number 15003171

## PREPAYMENT RIDER
### (Multi-State)

This Prepayment Rider is made this 14th day of JULY, 2003 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to METROCITI MORTGAGE LLC DBA NO RED TAPE HOME LOAN, A LIMITED LIABILITY COMPANY (the "Lender") of the same date and covering the property described in the Security Instrument and located at 5631 FOOTHILL DRIVE , AGOURA HILLS, CALIFORNIA 91301

(the "Property").

**Additional Covenants.** Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." A "full prepayment" is the prepayment of the entire unpaid principal due under the Note. A payment of only part of the unpaid principal is known as a "partial prepayment."

If, within the 60 month(s) period beginning with the date Borrower executes the Note (the "Penalty Period"), Borrower makes a full prepayment, or partial prepayment in any twelve (12)-month period that exceeds 20% of the original principal loan amount, Borrower will pay a prepayment charge as consideration for the Note Holder's acceptance of such prepayment. The prepayment charge will equal the amount of interest that would accrue during a six (6)-month period on the amount prepaid that exceeds 20% of the original principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the prepayment, unless otherwise prohibited by applicable law or regulation. No prepayment charge will be assessed for any prepayment occurring after the Penalty Period.

Notwithstanding the foregoing, in the event of a full prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first 8 month(s) of the term of the Note, no prepayment penalty will be assessed. In that event, Borrower agrees to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____ (Seal)
JOHN MANOS        -Borrower

_____ (Seal)
                  -Borrower

_____ (Seal)
                  -Borrower

_____ (Seal)
                  -Borrower

_____ (Seal)
                  -Borrower

_____ (Seal)
                  -Borrower

03 2161272

PREPAYMENT RIDER - 603B2 MULTI-STATE
11/15/99

DocMagic *800-649-1362*
www.docmagic.com

EXHIBITSp000027

A603b2.sls

This page is part of your document - DO NOT DISCARD



03 3092593

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

9:41 AM OCT 16 2003

# TITLE(S) :



L E A D    S H E E T

**FEE**

| FEE $7 | QQ |
|--------|----|
| DAF $2 |    |

D.T.T

**CODE**
20

**CODE**
19

**CODE**
9

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.

**Number of AIN's Shown**

THIS FORM NOT TO BE DUPLICATED

EXHIBITSp000028



**This page is part of your document - DO NOT DISCARD**





# 20141373272

**Pages:
0003**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

### 12/17/14 AT 12:04PM

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 28.00 |



**LEADSHEET**

201412173330016

**00009962832**

006550671

**SEQ:
01**

**DAR - Counter (Upfront Scan)**

**THIS FORM IS NOT TO BE DUPLICATED**



*E497023*

EXHIBITSp000029

**Recording Requested by:**
**When Recorded Mail To:**
**Mail Tax Statements To:**

```
┌                                    ┐
  Jessie Manos
  5771 Radford Avenue
  Valley Village, CA 91607

└                                    ┘
```

---

### QUITCLAIM DEED

The undersigned Grantor declares under penalty of perjury that the following is true and correct:

1.  Documentary transfer tax is NONE. There is no documentary transfer tax due because this is a bona fide gift and the Grantor received nothing in return. Revenue and Taxation Code §11911.

2.  This is a transfer under §63.1 of the California Revenue and Taxation Code and is excluded from reappraisal because this is a transfer between parent and child.

GRANTOR JOHN C. MANOS, an unmarried man, hereby remises, releases and forever quitclaims to JESSIE MANOS, an unmarried woman, all his right, title and interest in the following described real properties in the County of Los Angeles, State of California:

Lot 8 of Block 11, Tract 8451, in the City of Agoura Hills, County of Los Angeles, State of California, as per map recorded in Book 104, Pages 79-90 inclusive of Maps, in the office of the County Recorder of said County.

Said real property is more commonly known as 5631 Foothill Drive, Agoura Hills, California 91301.

Assessor's Parcel Number 2055-018-022

1

EXHIBITSp000030

AND

Lot 9 of Block 11, Tract 8451, in the City of Agoura Hills, County of Los Angeles, State of California, as per map recorded in Book 104, Pages 79-90 inclusive of Maps, in the office of the County Recorder of said County.

Said real property is undeveloped land.

Assessor's Parcel Number 2055-018-023

Date: _10/2/2014_

_____
                                    JOHN C. MANOS

STATE OF CALIFORNIA       )
                          )
COUNTY OF LOS ANGELES     )

On _October 2 2014_ , before me, _Carolyn Fank, Notary Public_ , personally appeared _John C. Manor_ , proved to me on the basis of satisfactory evidence to be the person(x) whose name(x) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(x) on the instrument the person(x), or the entity upon behalf of which the person(x) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

CAROLYN FANK
Commission # 2035973
Notary Public - California
Los Angeles County
My Comm. Expires Sep 4, 2017

_____
NOTARY PUBLIC

2

PO BOX 790005
St.Louis MO 63179-0005

**CitiMortgage**

citi

06/04/2012

00001028 BB 1OZ 154 LTR00730 AM1  021
ıllıııllllılılılıllllılılılıllۜılllllۜıllıllllllılllllll



John Manos
5630 FOOTHILL DR
AGOURA HILLS CA 91301-2236

Dear CitiMortgage Customer(s):

Your account is in default. As of the date of this letter the total past due amount is $8,170.56 including $1,062.5 in late charges, $121.50 in delinquency expenses and $1,254.70 in other fees. We have told a credit bureau about a late payment, missed payment or other default on your account. This information may be reflected in your credit report.

To avoid further delays, you may make your payment today using Phone Pay. Phone Pay is a fast and convenient program that lets you make your mortgage payments by phone at 1-800-723-7906 using funds directly from you checking account.  Please have your checking account information available. There is a fee for this service.

Please send the past due amount today to the following address:

CitiMortgage, Inc.
P.O. Box 689196
Des Moines, IA 50368-9196

If your delinquency is the result of a loss of employment or a reduction in income, you may be eligible for homeownership counseling from one of the Department of Housing and Urban Development-approved homeownership counseling agencies. Please call 1-800-569-4287 for information regarding the HUD-approved counseling agency nearest you.

As a result of the default status of this account and in accordance with the terms of the Mortgage Note/Deed o Trust or as required by the Investor/Guarantor of this loan, an exterior inspection of the property will be conducted and the cost for this inspection will be added to the total amount outstanding on this account.  The expense will be reflected as a delinquency expense on your monthly billing statement. While the account remair in default, monthly inspections may continue and the expense for each inspection will be charged to this accoun in the event the property is found to be vacant, abandoned, and/or unsecured the inspector may attempt to visually assess the interior condition of the property. An interior inspection may be necessary to fully ascertai the condition of the property in order to preserve, secure, and/or winterize the property. The expense for this property preservation will be charged to this account.

If you are unable to make your payment today, please call us toll free at 1-800-723-7906* to discuss payment arrangements with a Collection Specialist. When you call, please refer to your loan number 0626382573.

Prompt attention to this matter is appreciated.

If you have questions regarding this letter please call Lobryant Torrence at (855) 843-2549 ext 0480173*, Monday - Thursday 7:00 a.m. - 8:00 p.m. (CT), Friday 7:00 a.m. - 6:00 p.m. (CT) and Saturday 7:00 a.m. - 4:00 p.m. (CT)*, or via email at: lobryant.torrence@citi.com**. You may also contact me via mail at: CitiMortgage, Inc. Homeownership Support Team, 1000 Technology Drive, Mall Station 420, O'Fallon, MO 63368.



© 2012 CitiMortgage, Inc. CitiMortgage, Inc. does business as Citicorp Mortgage in NM. CitiMortgage, Inc. is an equal housing lender. Citi, Arc Design, and Citi a Arc Design are registered service marks of Citigroup Inc. *Calls are randomly monitored and recorded for quality assurance. CitiMortgage is a debt collector and a information obtained will be used for that purpose.

EXHIBITSp000032



## United States Department of Housing and Urban Development Servicemembers Civil Relief Act Notice

Legal Rights and Protections Under the SCRA: Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC App. §§ 501-597b) (SCRA).

Who May Be Entitled to Legal Protections Under the SCRA?
- Regular members of the U.S. Armed Forces (Army, Navy, Air Force Marine Corps and Coast Guard);

- Reserve and National Guard personnel who have been activated and are on Federal active duty;

- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds;

- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration;

- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

How Does A Servicemember or Dependent Request Relief Under the SCRA?
In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders.

CitiMortgage, Inc. (MS 312)
1000 Technology Drive
O'Fallon, MO 63368-2240
Phone: 1-800-723-7906† Fax: 1-636-261-6587
TTY Available Services: Dial 711 in the United States; Dial 1-866-280-2050 from Puerto Rico

There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

What Legal Protections Are Servicemembers Entitled To Under the SCRA?
- The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6 % during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.

- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within 9 months after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during, or within 9 months after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.

- The SCRA contains many other protections besides those applicable to home loans.

How Does a Servicemember or Dependent Obtain Information About the SCRA?
Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php

"Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA, please go to www.militaryonesource.com/scra or call 1-800-342-9647 (toll free from the Unites States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

 © 2012 CitiMortgage, Inc. CitiMortgage, Inc. does business as Citicorp Mortgage in NM. CitiMortgage, Inc. is an equal Housing lender. Citi, Arc Design, and Citi and Arc Design are registered service marks of Citigroup Inc. †Calls are randomly monitored and recorded for quality assurance.

EXHIBITSp000033

# Mortgage Account Information

**Citi**

| | |
|---|---|
| Account Number: | 0626382573-6 |
| Payment Due Date: | 02/01/15 |
| **Amount Due:** | **$2,967.28** |

*$81.52 late fee will be charged after 02/16/15.*

**Statement Date:** 01/16/15
How to reach us
www.citimortgage.com
Customer Service: 1-800-283-7918*
Please reference your account number 0626382573 when calling.
*Calls are randomly monitored and recorded to ensure quality service.

## Explanation of Amount Due

| | |
|---|---|
| Principal | $1,001.57 |
| Interest | $628.87 |
| Escrow | $1,282.69 |
| Regular Monthly Payment | $2,913.13 |
| Past Due Amount | $54.15 |
| Total Amount Due | $2,967.28 |

## Account Information

JOHN MANOS
Property Address: 5631 FOOTHILL DR
AGOURA HILLS, CA 91301

| | |
|---|---|
| Type of Mortgage | 5 YEAR/6 MONTH ARM |
| Outstanding Principal Balance | $287,482.20 |
| Interest Rate | 2.62500% |
| Interest Rate Change/Reset Date | 08/01/15 |
| Payment Change/Reset Date | 03/01/15 |
| Escrow Balance | $303.41 |
| Partial Payment Unapplied Balance | $54.15 |
| Taxes Paid Year to Date | $0.00 |

## Past Payments Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $999.39 | $999.39 |
| Interest | $631.05 | $631.05 |
| Escrow | $1,282.69 | $1,282.69 |
| Partial Payment (Unapplied)** | $54.15 | $54.15 |
| Total | $2,967.28 | $2,967.28 |

## Transaction Activity (12/18/14 to 01/16/15)

| Date | Description | Charges | Payments |
|---|---|---|---|
| 12/31/14 | Interest on Escrow Credit | | $1.50 |
| 01/16/15 | Payment Amount Received - Thank you | | $2,913.13 |
| 01/16/15 | Funds Received - Thank you | | $54.15 |

## Important Messages

**Partial Payments:** Any partial monthly payments that you make are not applied to your mortgage, but instead are held in a separate unapplied account. If you pay the balance of a partial monthly payment, the funds will first be applied to your outstanding principal, interest, and escrow until your payments are made through the current month. Any additional funds can then be designated in the coupon below.

Important messages continued on the next page

To ensure timely processing, please enclose your check and the coupon below in the envelope provided.



P.O. Box 6243
Sioux Falls, SD 57117-6243

**Mortgage Statement
Enclosed**

Account Number:  0626382573-6

Please designate how you want us to apply any additional funds. Undesignated additional funds are applied in the following order: 1) late charges and/or fees, 2) principal. Once paid, additional funds cannot be returned.
Do not include cash or account inquiries with your payment.
Please see reverse side for mailing address and phone number changes.

**Total Amount Due by 02/01/15:   $2,967.28**
$81.52 late fee will be charged after 02/16/15.

| | |
|---|---|
| Additional Principal: | $ |
| Additional Escrow: | $ |
| Additional Late Charges: | $ |
| Additional Monthly Payment: | $ |
| Total Amount Enclosed | $ |

Include account number on check. Make payable to CitiMortgage,

DM00014126 1 AT 0.408  V5073206 XTM 004757 0071

JOHN MANOS
5630 FOOTHILL DR
AGOURA HILLS CA 91301-2236

CITIMORTGAGE, INC.
PO BOX 689196
DES MOINES IA  50368-9196

EXHIBITSp000034



CitiMortgage



www.citimortgage.com

06/23/14

87545 015742
JOHN MANOS
5630 FOOTHILL DR
AGOURA HILLS CA    91301-2236

RE:    CitiMortgage Loan #:    0020302573
       Property Address:    5631 Foothill Dr
                            Agoura Hills, CA    91301

Dear CitiMortgage Customer(s):

Your mortgage loan currently reflects an outstanding late charge
and/or non-sufficient funds return check fee of $785.96.  This amount
is due under the Note and Mortgage/Deed of Trust Agreement.  These
charges will remain as outstanding on your account and will remain
itemized on your monthly statement, until they are paid.

Payment should be sent to:

                   CitiMortgage, Inc.
                   P.O. Box 689196
                   Des Moines, IA 50368-9196

Please disregard this notice if the outstanding late charges have
already been paid.

In accordance with federal law, CitiMortgage has designated the
following address where you can send a written request for
information, a written notice of error, or a qualified written
request:

CitiMortgage, Inc.
Attn: Customer Research Team
P.O. Box 10002
Hagerstown, MD 21747-0002

Thank you.


Collection Department
CitiMortgage, Inc.


140623B0015865

671-3060-0114F

EXHIBITSp000035
©2014 CitiMortgage, Inc. CitiMortgage, Inc. is an equal housing lender.  *Calls are randomly monitored and recorded for quality assurance. CitiMortgage is a debt collector and any information obtained will be used for that purpose.

# green tree
relationships that work

PO Box 6172
Rapid City, SD 57709-6172

Tel 1-855-297-6259
Fax 1-866-870-9919
greentreeservicing.com

## Do Not Discard! Important Account Information Enclosed.

January 29, 2015

+ 0533809 000003175 096TR1 0926735 GG (P2)
JOHN MANOS
5630 FOOTHILL DR
AGOURA HILLS CA 91301-2236

**CitiMortgage Inc. ("CitiMortgage") Account Number: 626382573**
**Green Tree Servicing LLC ("Green Tree") New Account Number: 828272807**

Dear John Manos:

**Welcome to Green Tree.** The servicing of your mortgage loan – that is, the right to collect loan payments from you - is being transferred from CitiMortgage to Green Tree effective February 1, 2015. The servicing transfer does not affect any terms or condition of your current mortgage loan, other than the terms directly related to the servicing of your loan. You can mail your payments directly to Green Tree at the following address: Green Tree Servicing LLC, PO Box 7169, Pasadena, CA 91109 - 7169.

Green Tree will begin posting payments to your account on or about February 9, 2015. If your payment was received by Green Tree or CitiMortgage prior to the posting date, we will apply your payment as of the day that it was received and no late fee will be assessed to your account.*

You should be receiving your first statement from Green Tree by mail the week of February 16, 2015. If you have any questions about the transfer of your mortgage loan servicing to Green Tree, we encourage you to visit:

### www.greentreeservicing.com

There you can register to securely access your account online, make a payment, establish a recurring electronic mortgage loan payment and obtain answers to frequently asked questions.

We are pleased to have you as a new customer. The following pages include more detailed information about this transfer and our services. If you need information regarding your account you can:
1) Visit our website at greentreeservicing.com.
2) Call us toll-free at 1-855-297-6259.
3) Make your inquiry to us at: Green Tree Customer Service Dept, PO Box 6172, Rapid City, SD 57709-6172.

*Please note: If you had an automatic payment plan with CitiMortgage, your payments will continue without interruption. Following February 1, 2015 your bank transaction description will indicate that your payment is now being made to Green Tree.

EXHIBITSp000036

LTR-017

## NOTICE OF SERVICING TRANSFER

The servicing of your mortgage loan is being transferred, effective February 1, 2015. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change.

CitiMortgage Inc. ("CitiMortgage") is now collecting your payments. CitiMortgage will stop accepting payments received from you after January 31, 2015.

Green Tree Servicing LLC ("Green Tree") will collect your payments going forward. Your new servicer will start accepting payments received from you on February 1, 2015.

**Send all payments due on or after February 1, 2015 to Green Tree at this address:**

**Green Tree Servicing LLC**
**PO Box 7169**
**Pasadena,CA 91109 - 7169**

If you have any questions for either your present servicer, CitiMortgage, or your new servicer, Green Tree, about your mortgage loan or this transfer, please contact them using the information below:

Current Servicer:
CitiMortgage
1-800-283-7918
Attn: Customer Research Team
PO Box 10002
Hagerstown, MD 21747-0002

New Servicer:
Green Tree
Customer Service
1-855-297-6259
PO Box 6172
Rapid City, SD 57709-6172

Important note about insurance: If you have mortgage life or disability insurance or any other type of optional insurance, the transfer of servicing rights may affect your insurance in the following way:

The transfer of servicing will affect the terms of or the continued availability of any mortgage life or disability insurance or other types of optional insurance products.

You should do the following to maintain coverage:

You will need to contact the company providing the product directly for continued coverage or enrollment.

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you.

Green Tree
New Servicer

January 29, 2015
Date

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

EXHIBITSp000037

RESPA Transfer Letter, 10/14/2014

LTR-017

**ditech**

Insurance Center
Miami, FL 33197

12/19/2015

JOHN MANOS
5630 FOOTHILL DR
AGOURA HILLS CA 91301

### Re: NOTICE OF PLACEMENT OF INSURANCE
Account Number: 82827280

Dear Valued Customer,

Your credit agreement with us requires you to maintain acceptable insurance on the collateral until you pay off the account secured by the collateral. Our records show that we do not currently have evidence of property insurance on the collateral. Therefore, we have exercised our right under the terms of your credit agreement to purchase property insurance coverage to protect our interests in the collateral.

You are responsible for the cost of the insurance we have purchased and any finance charges that are assessed. Enclosed is a copy of the declarations page and policy evidencing coverage we purchased. The coverage will start on the date shown in the policy or certificate, which may go back to the date of the account or the date your prior coverage stopped. Coverage of $ 206,000 results in an insurance premium in the amount of $ 1,202.00 that will be charged to your account. You will be charged interest on the premium at your contract rate, amortized over the remaining term of the insurance. You will be billed for the premium, and related interest in 8 equal installments; provided, that if an escrow account for payment of insurance has been established, or if your credit agreement allows us to establish an escrow account and one is established, the premium for the insurance may be charged to the escrow account and repayment will be governed by the Real Estate Settlement Procedures Act.

**Please note that the insurance coverage we purchased on the collateral was obtained through an affiliated insurance agency that may earn a commission on the insurance policy. The insurance we purchased:**

- **May be more expensive and provide less protection than insurance you obtain from an insurance agent or company you choose;**
- **Will pay claims made by us as the creditor for physical damage to the collateral;**
- **May not pay any claims made by you or against you in connection with the collateral;**
- **Will not give you any liability insurance coverage and will not give you any personal property contents coverage;**
- **Will not meet the requirements of your state's mandatory financial responsibility laws, if any.**

CONTINUED ON BACK OF PAGE

EXHIBITSp000038

HENP3000-0615

## American Security Insurance Company
### MORTGAGE SERVICE PROGRAM

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AUTHORIZATION FOR BORROWER TO FILE CLAIMS
### CALIFORNIA

The provisions in the Master Policy relating to CONDITIONS are amended and supplemented as follows:

Under CONDITIONS, the following is added:

23. Authorization of Borrower to Make, Report and File Claims.

   a. The Named Insured permits and authorizes any Borrower to whom a Certificate of Insurance is issued to report, make and file a claim with Us for any loss sustained to a Covered Property.

   b. The Borrower should advise Us as promptly as practicable following a loss to the Covered Property of information concerning the loss, including the date, times and possible cause of the loss.

   c. Initial reports of loss may be made by telephone by calling us at the Claims telephone number shown on the Certificate of Insurance.

   d. Claims reported, made and filed by a Borrower are limited to coverage of losses as provided in the Master Policy. That coverage is limited to loss and damage to the structure on the Covered Property and does not include losses to personal property or contents of the Borrower in the Covered Property and no coverage is provided for personal liability or additional living expenses of the Borrower.

   e. Any loss to a Covered Property shall be adjusted with and payable to the Named Insured and Borrower as their interests may appear, either by a single instrument or by separate instruments payable respectively to the Named Insured and the Borrower, at our option. We may also make payment to the Named Insured for the account of the Borrower.

All other terms and conditions of the policy remain unchanged.

EXHIBITSp000039

MSP-BORR-CLAIM-END-CA (04-12)

| AGENCY | | |
|---|---|---|
| Major | Sub | Minor | PMS |
| MSP 6188242 0204 | | | |

### RESIDENTIAL PROPERTY
## CERTIFICATE OF INSURANCE
#### Provided Under the Master Policy Issued to the Named Insured

**BORROWER**-Name and Address (Street No., City, State, Zip)
JOHN MANOS
5630 FOOTHILL DR
AGOURA HILLS CA 91301

**NAMED INSURED MORTGAGEE**-Name and Address
DITECH FINANCIAL LLC
345 ST PETER STREET STE R202
ST PAUL MN 55102

LOAN NUMBER: 82827280

Coverage is provided where a premium or limit of liability is shown for the coverage, subject to all conditions of the Master Policy.

| CERTIFICATE PERIOD: ONE YEAR | | COVERAGES | LIMITS OF LIABILITY | PREMIUM |
|---|---|---|---|---|
| EFFECTIVE DATE 09/27/2015 | EXPIRATION DATE 09/27/2016 | DWELLING | $ 206,000 | $ 1,202.00 |
| EFFECTIVE TIME: | 12:01 A.M. | | | |
| COVERED PROPERTY 5631 FOOTHILL DR AGOURA HILLS, CA 91301 | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **THIS CERTIFICATE DOES NOT INCLUDE BUILDING CODE UPGRADE COVERAGE** | | ANNUAL PREMIUM AMOUNT | | 1,202.00 |
| | | ANNUAL TOTAL CHARGED | | 1,202.00 |

Forms and endorsements which are made a part of this Certificate at time of issue:

## SEE BACK FOR LIST OF FORMS ATTACHED

**THIS CERTIFICATE OF INSURANCE IS NOT AN INSURANCE POLICY AND DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE MASTER POLICY. This Certificate is issued to the borrower as evidence of insurance placed by the Named Insured pursuant to the attached Master Policy. Please review the Master Policy and its endorsements for an explanation of the rights you may have under this Certificate.**

Coverage for the Covered Property is issued for the Certificate Period indicated above to the Named Insured under the Master Policy. The provisions of the Master Policy are applicable to this Certificate. You may file claims directly with American Security Insurance Company. Please see the California Authorization for Borrower To File Claims Endorsement attached to the Certificate. Payments for losses shall be adjusted with and payable to the Named Insured and you as your respective interests may appear, either by a single instrument or by separate instruments payable respectively to the Named Insured and you, at our option. We may also make payment to the Named Insured for your account.

### Deductibles:

With respect to all perils except Theft or Vandalism and Malicious Mischief, the sum of $ 250 shall be deducted from the amount which would otherwise be recoverable for each loss separately occurring. With respect to Theft or Vandalism and Malicious Mischief a $ 500 per loss deductible applies. With respect to vacant property a $1000 per loss deductible applies for Theft or Vandalism and Malicious Mischief.

CLAIMS INFORMATION ONLY
1-800-643-0202

ALL OTHER INQUIRIES
1-800-358-0600

**IMPORTANT NOTICE: The insurance evidenced by this certificate is obtained by the Named Insured as your lender or mortgage servicer. Immediately review the amount of insurance and exclusions. Your personal property and personal liability are NOT covered. You should contact your insurance agent or broker to obtain dwelling fire or homeowners insurance so that the coverage under the Master Policy may be replaced.**

Issue Date: 12/19/2015

# ditech.
a Walter company

PO Box 6172
Rapid City , SD 57709-6172
1(877) 624-8026

## Annual Escrow Account Disclosure Statement

| | |
|---|---|
| **Statement Date:** | **06/26/2016** |
| **Account Number** | **0052161262** |
| **Customer Service:** | 1-877-624-8026 |
| **Hours:** | Mon. – Fri. 7:00AM to 8:00PM CST |
| | Sat. 7:00AM to 4:00PM CST |
| **Website:** | www.ditech.com |

0-776-03818-0003994-001-1-000-000-000-000

JOHN MANOS
5830 FOOTHILL DR
AGOURA HILLS CA 91301-2236

| | |
|---|---|
| Payment Due Date: | 06/01/2015 |
| Principal and Interest: | $1,630.44 |
| Escrow: | $1,122.23 |
| **Total Current Payment** | **$2,752.87** |
| | |
| New Payment Effective: | 08/01/2016 |
| Principal and Interest: | $1,697.78 |
| Escrow: | $899.48 |
| Escrow Overage/Shortage: | |
| **Total New Payment** | **$2,597.26** |

---

*Ditech Financial LLC reviews your escrow account each year to determine if the current monthly payment amounts are sufficient to cover your projected property taxes and/or insurance premiums. Increases or decreases in your annual tax and/or insurance amounts may cause your monthly mortgage payment to change. Your monthly mortgage payment may also change if your loan totals include an adjustable rate feature or buy down assistance.*

The section below sets forth your anticipated escrow activity for the next 12 months. Projected figures are based on information provided by sources which may include: The last tax or insurance payments disbursed, and figures provided to Ditech Financial LLC by your prior servicer. See the reverse side for recent escrow history.

## ESCROW DISBURSEMENT

**Current Anticipated Disbursements**
This year, we anticipate that payments from your account will equal 10,793.76

| | |
|---|---|
| HAZARD INS | $1,202.00 |
| COUNTY TAX | $9,591.76 |
| Total Disbursements | $10,793.76 |

### PROJECTED ESCROW ACTIVITY FOR THE NEXT 12 MONTH ESCROW CYCLE

Your ending escrow balance from the last month of the account history is $10,066.53. Your starting balance according to this analysis should be $5,396.88. This means you have a surplus of $4,669.65. The net surplus (Surplus amount minus any repayments to escrow advances) must be returned to your escrow unless your account is past due or it is less than $50.00. In which case we have the option of keeping it and lowering your monthly payments accordingly.

| Month | Payments To Escrow | Payments From Escrow | Description | Required Balance | Projected Balance |
|---|---|---|---|---|---|
| | | | STARTING BALANCE | $5,396.88 | $10,066.53 |
| AUG 16 | $899.48 | | | $6,296.36 | $10,965.01 |
| SEP 16 | $899.48 | -$1,202.00 | HAZARD INS | $5,993.34 | $10,663.49 |
| OCT 16 | $899.48 | | | $6,893.32 | $11,562.97 |
| NOV 16 | $899.48 | -$4,795.88 | CNTY TX PARC | $2,996.92 | $7,666.57 |
| DEC 16 | $899.48 | | | $3,896.40 | $8,566.05 |
| JAN 17 | $899.48 | | | $4,795.88 | $9,465.53 |
| FEB 17 | $899.48 | | | $5,695.36 | $10,365.01 |
| MAR 17 | $899.48 | -$4,795.88 | CNTY TX PARC | $1,798.96 | $6,468.61 |
| APR 17 | $899.48 | | | $2,698.44 | $7,368.09 |
| MAY 17 | $899.48 | | | $3,597.92 | $8,267.57 |
| JUN 17 | $899.48 | | | $4,497.40 | $9,167.05 |
| JUL 17 | $899.48 | | | $5,396.88 | $10,066.53 |
| TOTAL | $10,793.76 | -$10,793.76 | | | |

**Escrow Payment Calculation**
$10,793.76 / 12 months = $899.48

### Calculation of Escrow Adjustment

| | |
|---|---|
| Beginning Required Balance | $5,396.88 |
| Beginning Projected Balance | $10,066.53 |
| Escrow Overage | $4,669.65 |
| Monthly Escrow Adjustment | $0.00 |

CUSHION SELECTED BY SERVICER:
$1,798.96

These calculations indicate the projected escrow balance will exceed the allowable low point. The resulting overage is $4,669.65. If you are currently in bankruptcy proceedings this amount may not include the amount in the Proof of Claim. Please contact us for additional details.

Notice: Ditech Financial LLC is a licensed mortgage servicer and debt collector.

Notwithstanding anything herein to the contrary, if you have filed a bankruptcy petition and there is either an "automatic stay" in effect in your bankruptcy case or you have received in that case a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, however, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

Your account history may answer your questions. If not, please call our toll free number for further assistance at 1-877-624-8026.

## IMPORTANT MESSAGES

Our website has new content. Visit www.ditech.com to learn about new **Topics of Interest** and view our **expanded FAQ section**. You can also click on the Borrower Services tab to register for **GT Portal** where you can make a payment, view your payment history, activate online statements and much more.

005-0814-1100F

---



# ditech.
a Walter company

JOHN MANOS

**Account Number:** 0052161262

*Ditech will handle the overage as indicated below:*

- *If the overage amount exceeds $50.00, you will receive a refund check within 5-7 business days from the date of this statement, unless your mortgage is delinquent.*

- *If the overage amount is less than $50.00, the overage amount will be spread over a 12 month period reducing your monthly payment, unless your mortgage is delinquent.*

- *If this statement reflects a surplus amount that is less than the escrow payments not yet received, a refund check will not be issued.*

EXHIBITSp000041



# Home Insurance New Policy

GABM001242

**TARA BORRELLI**
5771 RADFORD AVE
VALLEY VILLAGE CA 91607-1323

## Your Farmers Policy

**Policy Number: 99171-31-32**
Effective: 11/20/2015 12:01 AM
Expiration: 11/20/2016 12:01 AM

## Property Insured

5631 Foothill Dr
Agoura Hills, CA 91301-2235

1/7/2016

Dear Tara Borrelli,

Thank you for choosing Farmers Insurance for your home insurance needs.

Enclosed are some important documents for your new policy. Please take some time and carefully review this information, which includes:

- Declaration page – a summary of your insurance coverages, limits, and deductibles
- Your insurance policy form and endorsements
- Detailed reconstruction cost estimate of your home

Please review the features of your home that were used to calculate the assessment in the reconstruction cost estimate. If you find any incorrect or incomplete information, please contact me.

A summary of your premium information is shown below.

## Your Farmers Agent

**Richard B Willand**
13059 San Fernando Rd
Sylmar, CA 91342
(818) 367-1539
rwilland@farmersagent.com

*To file a claim call*
**1-800-435-7764**

## Did you know?

   **Go Paperless**

**Save stamps, time and trees....Go Paperless!** You can choose to receive your Farmers policy documents and/or billing statement electronically. Enroll at farmers.com and choose the paperless options!

## Premium at-a-glance

| | |
|---|---|
| Policy Premium | $782.45 |
| Fees | $12.00 |
| **Premium and Fees** | **$794.45** |

**This is not a bill.**
Your bill with the amount due will be mailed separately.

We appreciate your business.

Sincerely,

Farmers Insurance
**Richard B Willand**
(818) 367-1539
rwilland@farmersagent.com

**farmers.com**



25-8164   1-14

EXHIBITSp000042



Ditech Financial LLC
P.O. Box 6172
Rapid City, SD 57709-6172
Phone Number: (800) 643-0202
Fax Number: (866) 870-9919
ditech.com

June 8, 2016

JOHN MANOS
5630 FOOTHILL DR
AGOURA HILLS CA 91301

### RE: Payoff Statement
Account Number #:52161262          Name: JOHN MANOS
Property Address: 5631 FOOTHILL DR
          AGOURA HILLS CA 91301

| | |
|---|---|
| The payoff on the above-referenced account is: | $300,788.40 |
| This includes the following: | |
| | |
| Principal Balance: | $283,462.75 |
| Interest through 06/18/2016 at 3.12500%: | $9,123.10 |
| Prepayment Penalty Interest: | $ |
| Prepayment Penalty Flat Fee: | $ |
| Escrow: | $5,644.69 |
| Buydown/Subsidy/Replacement Reserve Balance: | $ |
| Payments Held in Suspense: | $ |
| Legal Fees: | $1,319.29 |
| HUD Subsidy Balance: | $ |
| Pro-Rated Mortgage Insurance Premium: | $ |
| Pro-Rated Private Mortgage Insurance: | $ |
| Pro-Rated Rural Housing Service Fees: | $ |
| Corporate Advances: | $494.75 |
| Deferred Balance: | $ |
| Late fees: | $743.82 |
| Returned Check Fees: | $ |
| Other Fees: | $ |

### TOTAL AMOUNT DUE:                    $300,788.40

This amount is good through: 06/18/2016 and will accrue $24.27 interest per day after this date. Any
transactions that occur on or after 06/08/2016 may change the payoff amount.

All payoffs should be mailed to:

REGULAR/USPS OVERNIGHT MAIL
Ditech Financial LLC ("Ditech")
DEPT. CH 9052
Palatine, IL 60055-9052

Payoff Quote – Generic Letter, 05/12/2015                                        LTR-1434

EXHIBITSp000043

# ditech.

**FAX**

Date:        08 June, 2016

To:          18185098130

Fax Number:          18185098130

Subject:          po

Pages:          3

Ditech Financial LLC
Correspondence
P.O. Box 6172
Rapid City, SD 57709-6172

Customer Service: 1-800-643-0202
Fax: 1-866-870-9919
ditech.com

Ditech Financial LLC reserves the right to demand additional funds to correct any error or omission in the attached payoff figure that was calculated in good faith, whether the error or omission is mathematical, clerical, typographical or for any transactions that occurred on or after the date of this payoff quote.

If you are currently in active bankruptcy, the amounts reflected are contractual and may not be the amounts owed pursuant to the bankruptcy plan.

Payoff funds must be remitted using a money order, cashier's check or other certified instrument unless a Title Company remits the funds. Any refund (if applicable) and title related documents will be mailed to the customer's address unless otherwise instructed.

If you currently have your monthly payment set up on automatic withdrawal or have any pending payments setup, we advise you to contact Customer Service at the below phone number to cancel your activation/payments prior to payoff.

For Home Equity Line of Credit accounts, the borrower must send a request in writing to close the account.

For certain loan types, if the funds received are not sufficient to pay off the account in full, the funds will not be posted until the remaining

All payoffs should be mailed to:

| REGULAR/USPS OVERNIGHT: | OTHER OVERNIGHT MAIL: | BANK WIRING INSTRUCTIONS: |
|---|---|---|
| Ditech | Ditech | ABA/ROUTING: |
| 026009593 | | |
| DEPT. CH 9052 | Attention: 9052-PAYOFFS | ACCOUNT: 1257813511 |
| Palatine, IL 60055-9052 | 5505 N. Cumberland Ave Suite 307 | Account Name: Ditech Financial LLC |
| | Chicago, IL 60656 | Bank Name: Bank of America |

MEMO SECTION NOTE FOR WIRING INSTRUCTIONS ONLY: The memo section (also referred to as Advice, Instructions to Beneficiary or OBI) of the payoff wire must include the account name and 9-digit Ditech account number. If this information is not included or misplaced, the payoff cannot be applied and will be rejected. The result of the rejection will require a new payoff quote and likely a larger amount due.
If you have any questions, please call Customer Service at 1-800-643-0202, Monday - Friday, 7:00 a.m. to 8:00 p.m. CT, and Saturday 7:00 a.m. to 1:00 p.m. CT.

Sincerely,

Customer Service
Ditech Financial LLC

Any existing lender-placed property insurance premium purchased by Ditech on your account will be canceled upon account payoff, and any related unearned premiums will be refunded.

BANKRUPTCY NOTICE: If you are in bankruptcy or have been discharged in bankruptcy, this letter is for informational purposes only and

The information contained in this facsimile transmission is privileged and confidential, and for the sole use of the intended recipient. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of the accompanying communication is prohibited. If you have received this communication in error, immediately notify us by telephone at the contact number above.

BANK WIRING INSTRUCTIONS
Beneficiary Name: Ditech Financial LLC ("Ditech")
Beneficiary/Receiving Bank: Bank of America
Beneficiary Bank ABA: 026009593
Beneficiary Bank Account: 1257813511

MEMO SECTION: The memo section (also referred to as Advice, Instructions to Beneficiary, or OBI) of the payoff wire must include the account name and 10-digit Ditech Financial LLC ("Ditech") account number. If this information is not included or misplaced, the payoff cannot be applied and will be rejected. The result of rejection will require a new payoff quote and likely a larger amount due.

Ditech reserves the right to demand additional funds to correct any error or omission in the above payoff figure that was calculated in good faith, whether the error or omission is mathematical, clerical, typographical, or for any transactions that occurred on or after the date of this payoff quote.

If you are currently in an active bankruptcy, the amounts reflected above are contractual and may not be the amounts owed pursuant to the bankruptcy plan.

Payoff funds must be remitted using a money order, cashier's check or other certified instrument unless a Title Company remits funds. Any refund (if applicable) will be mailed to the customer's address unless otherwise instructed.

If you currently have your monthly payment set up on automatic withdrawal, or have any pending payments setup, we advise you to contact Customer Service at the below phone number to cancel your activation/payments prior to payoff.

For release of documents, please refer to the following for your account type:

*   Mortgage Releases, satisfactions or reconveyances: These will be mailed to the county for recording and will not be mailed to the party remitting the payoff check.

If the funds received are not sufficient to pay off the account in full, the funds will not be posted until the remaining amount is received to pay off the account in full.

Any existing lender-placed property insurance previously purchased by Ditech on the account will be canceled upon payoff and any related unearned premiums will be refunded.

If you have any other questions, please call Customer Service at (800) 643-0202.

Sincerely,

Ditech
(800) 643-0202
Monday – Friday, 7:00 a.m. to 8:00 p.m. CT, and Saturday 7:00 a.m. to 1:00 p.m. CT

Payoff Quote – Generic Letter, 05/12/2015

LTR-1434

EXHIBITSp000045



# TRUSTEE CORPS

17100 Gillette Avenue, Irvine, CA 92614
949.252.8300 *phone* 949.252.8330 *fax*
www.trusteecorps.com

June 7, 2016

John Manos
5631 Foothill Drive
Agoura Hills, CA 91301

Re:     CA05001830-15
        5631 Foothill Drive, Agoura Hills, CA 91301

Dear Mr. Manos:

We received your correspondence dated April 7, 2016. We are unable to provide loan information you have requested as Trustee Corps serves a nominal capacity as foreclosure trustee for the above referenced property. Requests of this nature should be directed to the lender.

Please be advised, Trustee Corps is not authorized to accept service of your correspondence on behalf of any parties who may be involved and this correspondence shall not be construed as such. Further, Trustee Corps specifically reserves any of its rights and/or privileges available and by responding to your correspondence, does not make any representation concerning any and all allegations contained therein, other than those stated herein. Comments or concerns specific to Trustee Corps may be submitted online. Please visit us at www.trusteecorps.com.

Sincerely,

Trustee Corps

Marisol A. Nagata, Esq.
General Counsel

MAN:eag



EXHIBITSp000047

Trustee Corps.
17100 Gillette Ave,
Irvine CA 92614



CA05001830-15-2
JESSIE MANOS
5771 RADFORD AVENUE
VALLEY VILLAGE, CA 91607



# TRUSTEE CORPS

*Experience. Trust. Integrity.*

17100 Gillette Avenue

Irvine, CA 92614

Ph (844) 670-8860    Fax (949) 752-7091

# **PLEASE READ**

## (Important)

As you know, you are requesting the amount to reinstate or pay off a loan that is in foreclosure. Based on this situation, our company has strict requirements, which are listed below:

Please allow adequate time when making your requests. On average this process takes between 7 to 21 business days to complete. The time period might be longer or shorter depending on the Lender and the volume of requests received.

**Only cash or cashier's checks will be accepted to cure the default.**

**No personal checks, No escrow company checks, No title company checks, No business checks, No trust fund checks and No wire transfers will be accepted.** If you have any questions regarding this requirement, please contact our office before tendering funds.

We do not automatically issue updates or per diem interest amounts on processed demands without a new request. Each time a demand needs to be updated, a new request must be made to the Lender.

You must contact our office at least 1-business day prior to tendering funds.

We reserve the right to return any funds that are not adequate to reinstate or pay off the default on this loan. **TRUSTEE CORPS** AND THE LENDER ON THIS LOAN HAVE THE RIGHT TO ADJUST THESE FIGURES AND REFUSE ANY FUNDS WHICH ARE INSUFFICIENT TO PAY THE LOAN IN FULL OR REINSTATE FOR ANY REASON, INCLUDING BUT NOT LIMITED TO ERROR IN CALCULATION, PREVIOUSLY DISHONORED CHECKS OR MONEY ORDERS, OR ADDITIONAL DISBURSEMENTS MADE BETWEEN THE DATE OF THIS PAYOFF STATEMENT AND THE RECEIPT OF FUNDS.

\* IMPORTANT: Some of the fees and costs listed above may not actually be incurred, if you payoff on the date of this letter or if events we anticipate will happen do not occur. We only require that you pay the fees and costs actually incurred as of the date of your payment. If for whatever reason your payment includes any anticipated fee or cost or other item but the actual amount due on the date of payment is less, any excess amount will be returned to you.



**TRUSTEE CORPS**

*Experience. Trust. Integrity.*

17100 Gillette Avenue

Irvine, CA 92614

Ph (844) 670-8860    Fax (949) 752-7091

If your payoff amount tendered is less than the total amount due on the date of your payment, the lender or servicer reserves the right to reject your payment and continue with the legal process.

The reinstatement or payoff figures listed above include items that have been paid by the lender or servicer or incurred by the Trustee Corps that are currently due or will become due by the Good Through Date. In constructing this reinstatement or payoff, we have included anticipated additional fees and costs in order to provide you with an estimated payoff after the date of this letter. These anticipated fees and costs represent an estimate as to what our actual fees and costs will be if you pay off your loan no later than the Good Through Date. Please understand that the above figures are subject to final verification upon receipt by the lender or servicer. All fees and costs incurred after the issuance of this payoff letter will continue to be assessed until the loan is paid in full.

**Reinstate and/or Payoff funds must be made payable and delivered to:**



**TRUSTEE CORPS**

*Experience. Trust. Integrity.*

**17100 Gillette Ave.**
**Irvine, CA 92614**

**Ph (844) 670-8860    Fax (949) 752-7091**

**attn:  Reinstatement/Pay Off Dept.**

If you are unable to cure the amount due on the foreclosure action against your property, there might be other alternatives available to you. Please contact your Lender's loss mitigation department.

This information is provided to you as a courtesy only and is not a guaranty of the outcome of your situation.

Trustee Corps may be acting as a debt collector attempting to collect a debt.
Any information obtained may be used for that purpose.



# TRUSTEE CORPS

*Experience. Trust. Integrity.*

17100 Gillette Avenue

Irvine, CA 92614

Ph (844) 670-8860    Fax (949) 752-7091

DATE: June 9, 2016

**JESSIE MANOS**
**5631 FOOTHILL DR**
**AGOURA HILLS, CA  91301-**

**Reinstatement / Pay Off Demand**

| | |
|---|---|
| TRUSTEE SALE #: | **CA05001830-15** |
| LOAN #: | **0052161262** |
| PROPERTY: | **5631 FOOTHILL DR, AGOURA HILLS, CA 91301-** |

To Whom It May Concern:

With regards to the above referenced file our office is handling, enclosed please find our REINSTATEMENT and/or PAY OFF Demand, which you have requested.

Please be advised that this loan is currently in foreclosure and/or bankruptcy and the figures provided herewith are subject to change at any time due to additional fees and costs relating to the foreclosure/bankruptcy proceeding may accrue before the "good through/expiration date" of the Demand.

Please note that by providing this Demand to you with a "good through/expiration date", no deadlines are waived, postponed and/or tolled, including, but not limited to, Trustee`s sale dates and statutory reinstatement/pay off dates.

You must pay the total amount due stated in the Demand (in the form of a cashier`s check <u>only</u>) on or before the expiration date in order to REINSTATE and/or PAY OFF this loan.  Please review the attached document(s) for specific payment instructions.

**\*\*\*\* IMPORTANT \*\*\*\***

## THESE FIGURES ARE SUBJECT TO FINAL VERIFICATION UPON RECEIPT OF FUNDS

Please feel free to contact our office if you should have any questions or concerns.

Sincerely,

TRUSTEE CORPS

[Enclosure (s)]



# TRUSTEE CORPS

*Experience. Trust. Integrity*

17100 Gillette Avenue

Irvine, CA 92614

Ph (844) 670-8860    Fax (949) 752-7091

Date:  June 9, 2016 T.S. #: CA05001830-15  Loan #0052161262 Beneficiary:  Ditech Financial LLC
Prepared By: DB

# REINSTATEMENT DEMAND

| | |
|---|---|
| Payments | $38,976.08 |
| Late Charges | $743.82 |
| Pending Late Charges | $84.89 |
| Corporate Advance | $494.75 |

## TOTAL amount due to <u>REINSTATE</u> loan: $<u>40,299.54</u>

**** IMPORTANT ****
**THESE FIGURES ARE SUBJECT TO FINAL VERIFICATION UPON RECEIPT OF FUNDS**

[Please note the following:]

## THIS STATEMENT EXPIRES ON:  7/11/2016  @  3:00p.m.

PLEASE BE ADVISED THAT YOU MUST CONTACT OUR OFFICE AT LEAST 1-BUSINESS DAY PRIOR TO SENDING IN FUNDS FOR AN UPDATE ON THE TOTAL AMOUNT DUE TO REINSTATE THIS LOAN. *TRUSTEE CORPS* WILL NOT ACCEPT ANY FUNDS UNLESS THE TOTAL AMOUNT DUE IS VERIFIED PRIOR TO THE EXPIRATION DATE OF THIS DEMAND. *TRUSTEE CORPS* WILL NOT BE RESPONSIBLE FOR ANY SHORTAGE OF FUNDS. *TRUSTEE CORPS* AND THE LENDER ON THIS LOAN HAVE THE RIGHT TO REJECT AND RETURN ANY FUNDS, WHICH ARE NOT ADEQUATE TO REINSTATE THE DEFAULT.

You <u>must provide</u> proof that the following items are paid current (prior to tendering funds):
   -SENIOR LIENS
   -PROPERTY TAXES
   -FIRE INSURANCE

Signed by:                                                                    Approved by:

Reinstatement/Pay Off Department

## REGARDING REINSTATEMENTS AND/OR PAY OFFS SENT TO *TRUSTEE CORPS:*

*TRUSTEE CORPS* <u>will only</u> accept CASH or CASHIER'S CHECKS <u>made payable in U.S. Dollars</u> to *TRUSTEE CORPS.*
<u>NO</u> personal checks, <u>NO</u> Title Company, <u>NO</u> Escrow Company, <u>NO</u> business checks or <u>NO</u> wire transfers will be accepted.
All funds are subject to final verification with the lender.
Funds must be delivered to *TRUSTEE CORPS* at: *17100 Gillette Ave., Irvine, CA 92614*

Please direct any correspondence to:  *REINSTATEMENT / PAY OFF DEPARTMENT;* rprequests@trusteecorps.com

# green tree

P.O. Box 8172
Rapid City, SD 57709-6172
1-800-643-0202
Fax 1-866-870-9916
greentreeservicing.com

June 19, 2015

JOHN MANOS
5630 FOOTHILL DRIVE
AGOURA HILLS, CA 91301

RE: Green Tree Servicing LLC ("Green Tree") Account No. 82827280 - 7

Dear John Manos,

This letter is in response to your correspondence received by Green Tree regarding the above referenced account number. Green Tree has complied with The Fair Debt Collection Practices Act ("FDCPA") by providing you this written response to your inquiry.

The servicing of your mortgage loan that is, the right to collect loan payments from you was transferred from CitiMortgage to Green Tree effective February 1, 2015. The servicing transfer does not affect any terms or condition of your current mortgage loan, other than the terms directly related to the servicing of your loan. There were no changes to the account terms or conditions as a result of the servicing transfer. Please be aware Green Tree did not originate nor owns the account; it merely services it for a third party and can provide information from the servicing transfer date forward. Fannie Mae ("FNMA") owns the account. The account and the Note is owned by Fannie Mae, they are located at 2600 Wisconsin Ave., N.W.Washington, DC 20216.

Further, please be advised that the owner does not service the mortgage account. All correspondence and inquiries concerning the mortgage account should be addressed to the account servicer. The servicer has authority to act on the owner's behalf with regard to the administration of the mortgage account and respond to any questions about the mortgage account.

In connection with the concerns outlined in your letter and in verification of your debt with the original creditor, we have obtained and are enclosing a copy of the Note that you signed. After reviewing Note, if you still dispute the validity of your debt, please provide us with further detail in support of your assertion, including any available supporting documentation such as an affidavits, cancelled checks, police reports, etc.. This documentation should be mailed to the above address for further research and we will respond accordingly.

Thank you for your correspondence. If you have any further questions or concerns, please contact Green Tree at (800) 643-0202, Monday - Friday, 7:00 a.m. to 8:00 p.m. CST, and Saturday 7:00 a.m. to 1:00 p.m. CST.

Sincerely,

Green Tree
Customer Service Correspondence

/arw/47/

*This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.*

EXHIBITSp000053

# green tree

P.O. Box 6172
Rapid City, SD 57709-6172
1-800-643-0202
Fax 1-866-870-9919
greentreeservicing.com

June 29, 2015

JOHN MANOS
5630 FOOTHILL DR
AGOURA HILLS CA 91301

RE: Green Tree Servicing LLC ("Green Tree") Account Number 82827280-7

Dear John Manos,

This letter is in response to your "Qualified Written Request" received June 25, 2015 by Green Tree regarding the above referenced account number.

The above loan originated over three years ago and has no right of rescission. Please be advised, the ownership information provided to you in our letter dated June 19, 2015 was inaccurate. The correct ownership information is provided below:

- Owner of the Mortgage loan: Fannie Mae in its capacity as Trustee
- Contact address: 3900 Wisconsin Ave, NW, Washington, DC 20016-2892
- Contact phone number: 1-800-7FANNIE (1-800-732-6643)
- Trust Identifier: 748643
- FNMA loan number: 1692962017

As of today the account is past due $2,752.67 to satisfy the June 1, 2015 due date and has a late fee balance due in the amount of $81.52. You may contact your account representative Catalina H. at (800) 643-0202, extension 61705 to discuss loss mitigation options.

If you have any further questions or concerns, please contact Green Tree at (800) 643-0202, Monday - Friday, 7:00 a.m. to 8:00 p.m. CT, and Saturday 7:00 a.m. to 1:00 p.m. CT.

Sincerely,

Green Tree
Customer Service Correspondence

/kas/57

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

EXHIBITSp000054

# green tree

P.O. Box 6172
Rapid City, SD 57709-6172
1-800-643-0202
Fax 1-866-870-9919
greentreeservicing.com

July 10, 2015

JOHN MANOS
5630 FOOTHILL DR
AGOURA HILLS CA 91301

RE: Green Tree Servicing LLC ("Green Tree") Account Number 82827280-7

Dear John Manos,

This letter is in response to your correspondence dated July 2, 2015 received by Green Tree regarding the above referenced account number.

The servicing of the account was transferred from CitiMortgage Inc. ("CitiMortgage") to Green Tree effective February 1, 2015. Copies of the Corporate Assignment of Deed of Trust and Transfer of Servicing notice dated January 29, 2015 are enclosed. The Transfer of Servicing notice is the required notice pursuant to the Real Estate Settlement Procedures Act ("RESPA") and is sufficient evidence that we have the servicing rights to the account.

As previously advised in our response dated June 29, 2015, we are servicing the loan on behalf of Fannie Mae. There is not a successor in interest because we did not purchase and payoff the loan balance with CitiMortgage, it was transferred to us.

If you have any further questions or concerns, please contact Green Tree at (800) 643-0202, Monday - Friday, 7:00 a.m. to 8:00 p.m. CT, and Saturday 7:00 a.m. to 1:00 p.m. CT.

Sincerely,

Green Tree
Customer Service Correspondence

/kaa/39

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

EXHIBITSp000055

# green tree

P.O. Box 6172
Rapid City, SD 57709-6172
1-800-643-0202
Fax 1-866-870-9919
greentreeservicing.com

August 19, 2015

JOHN MANOS
5630 FOOTHILL DR
AGUOURA HILLS CA 91301

RE:     Green Tree Servicing LLC ("Green Tree") Account Number 82827280 - 7

Dear John Manos:

This responds to your "qualified written request" dated July 13, 2015 and received on August 17, 2015, regarding the above-referenced account serviced by Green Tree. Any information requested outside the scope of RESPA, or which is proprietary, confidential, burdensome or immaterial to the servicing of your account, will not be provided.

Enclosed are copies of our previous letters, the Adjustable Rate Note ("Contract"), Deed of Trust and Assignment. The original documents are held by a custodian. A custodian is a facility outside of Green Tree which guarantees the documents are securely held for our customer as well as us. Regarding the contract, we verify the enclosure is a true copy.

The owner information was provided in our previous letters and again for your reference. The account is owned by:

> Owner of the Mortgage Loan: Fannie Mae in its capacity as Trustee
> Contact Address: 3900 Wisconsin Ave, NW
> Washington, DC, 20016-2892
> Contact Phone Number: 1-800-7FANNIE (1-800-732-6643)
> Trust Identifier: 748643

Please be advised that the owner does not service the mortgage account. All correspondence and inquiries concerning the mortgage account should be addressed to the account servicer. The servicer has authority to act on the owner's behalf with regard to the administration of the mortgage account, and respond to any questions about the mortgage account.

We stand by all previous responses. Copies of the payment history and payoff quotation are enclosed. If you believe a payment was made but not applied to the account and wish us to research the missing payment, we will require proof of the payment. Proof of a payment includes one or more of the following: the front and back copy of the money order or check, an un-altered copy of your bank statement for the period the check was processed or receipts for Western

EXHIBITSp000056

Union, Money Gram, etc. Please send the additional information to the address on this response or the fax number (866) 870-9919.

As of the date of this response, the account is due the following:

| Month | Principal | Interest | escrow | Amount Due |
|---|---|---|---|---|
| June 1, 2015 | 1,010.37 | 620.07 | 1,122.23 | 2,752.67 |
| July 1, 2015 | 1,012.58 | 617.86 | 1,123.23 | 2,752.67 |
| August 1, 2015 | 1,014.79 | 615.65 | 1,123.23 | 2,752.67 |
| Late Fees | | | | 244.56 |
| Amount Due | | | | 8,502.57 |

Please be advised that at this time, Green Tree has begun the legal process by sending the Right to Cure on July 14, 2015, and may now, if we so choose, move forward with legal remedies to enforce the lien.

If you have additional questions or concerns, please contact your account representative, Matthew at (800) 643-0202 extension 31842. Our Customer Service Department is also available to assist you and can be reached at (800) 643-0202, Monday - Friday 7 AM to 8 PM, and Saturday 7 AM to 1 PM CST.

Sincerely,

*Customer Service*
*Green Tree*

/lfs/49/

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

Green Tree Servicing LLC
800-643-0202
9600 Center Ave. Suite 160
Rancho Cucamonga, CA 91730

relationships that work

# green tree

+ 0568402 000013702 096C08 0925951
JOHN MANOS
5630 FOOTHILL DR
AGOURA HILLS CA 91301-2236

ıllıllıllıllıllıllılllıllıllıllıllıllıllıllıll

| NOTICE OF DEFAULT |
| AND |
| RIGHT TO CURE DEFAULT |

Date of Notice: 07/14/2015

Creditor: **Green Tree Servicing LLC**

RE: Loan No: **828272807**

Credit Transaction: Loan Secured by Real Property

Dear Borrower:

You are now in default on the above referenced credit transaction. You have the right to correct this default within thirty (30) days from the date of this Notice.

If you cure the default, you may continue with the contract as though you did not default.

Your default consists of: **Failure to submit your monthly payments due 06/01/2015 through 07/01/2015.**

Cure of default: Within thirty (30) days from the date of this notice you may cure your default by sending the total amount of **$5,586.86** or you may cure your default by completing a modification or repayment agreement arranged through Green Tree Servicing LLC ("Green Tree") by contacting the Collection Department at the above-referenced address.

Creditor's Rights: If you do not cure your default in the time allowed by taking action as stated above, the creditor may exercise any or all of our remedies provided by law and in your Note. These remedies may include foreclosure on the real property securing the account. You may be held personally liable under state law, if any, for any deficiency balance not realized from the sale of the property.

If you fail to cure the default within (30) days from the date of this notice, the maturity of this account is accelerated and full payment of all amounts due under the agreement is required without further notice from us. Please review your mortgage or deed of trust for any right you may have to reinstate your account after acceleration but prior to the earlier of (a) five days before the sale of the property under any power of sale in the Security Instrument or (b) entry of judgment enforcing the Security Instrument, by paying the Creditor all sums then due as if not acceleration had occurred. You may also have the right to assert in the foreclosure proceeding the non-existence of a default or any other defense available to you.

If this default is not cured, Green Tree will report the defaulted account to any appropriate credit reporting agency.

If you have any questions, contact Green Tree at 800-643-0202 (phone) or 866-870-9919 (fax) Monday through Friday between the hours of 8 a.m. and 6 p.m. Central Time. You may also contact Green Tree in writing at the above-referenced address.

If this default was caused by your failure to make payments, and you want to pay by mail, send a certified check, money order or cashier's check. DO NOT SEND CASH.

If you are unable to cure the default due to an involuntary loss of employment or other reason, counseling assistance may be available to you from certain agencies that are HUD-approved mortgage counseling agencies. You may contact us to get the name of the mortgage counseling agency that is closest to you.

If you are a servicemember or a dependent of a servicemember, you may be entitled to certain protections under the federal Servicemembers Civil Relief Act (50 U.S.C. Sec. 501 et seq.) regarding your interest rate and the risk of foreclosure. In addition, counseling for covered servicemembers is available at agencies such as Military OneSource and Armed Forces Legal Assistance.

EXHIBITSp000058

You may contact Green Tree at the above-referenced telephone number or address and request the following:

(i) A copy of your promissory note or other evidence of indebtedness.

(ii) A copy of your deed of trust or mortgage.

(iii) A copy of any assignment, if applicable, of your mortgage or deed of trust required to demonstrate the right of the mortgage servicer to foreclose.

(iv) A copy of your payment history since you were last less than 60 days past due.

Sincerely,

Green Tree

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

EXHIBITSp000059

July 2, 2015

Green Tree

P.O. Box 6172

Rapid City, SD 57709-6172

Thank you for your response,

You state as follows,

" **Please be aware Green Tree did not originate nor owns the account; it merely services it for a third party and can provide information from the servicing transfer date forward. Fannie Mae ("FNMA") owns the account. The account and the Note is owned by Fannie Mae, they are located at 2600 Wisconsin Ave., N.W. Washington, DC 20216."**

Please send me the following information:

1. Name and address of the third party you are serving the loan for.
2. From the transfer date, who are the successors in interest.

Thank you again,

John Manos

July 13, 2015

Green tree

P.O. Box 6172

Rapid City, SD 57709-6172

RE:     John Manos

        5631 Foothill Drive

        Loan Number 828272807

## QUALIFIED WRITTEN REQUEST

Dear Sir/Madam:

Please accept this letter as a Qualified Written Request ("QWR") pursuant to the Real Estate
Settlement Procedures Act ("RESPA") at 12 U.S.C. 2605(e) as amended ("RESPA").

The requests made hereunder are directed to you as my loan servicer. These requests relate
directly to the servicing of my loan insofar as you, as the loan servicer, cannot lawfully be
servicing a loan that cannot be shown to be legally owned by an identified person or entity.

To independently validate my concerns and in accordance with the applicable law stated herein,
please respond to the following requests:

1.) Please fully identify the owner of my loan by name, address and phone number.

The "owner" of my loan shall be defined as the person or entity that purports to be lawfully
entitled to the payments due under any promissory note that I allegedly signed when the loan
was originated. If the "owner" is a so-called "securitized trust", please identify:

a.) the name of the specific trust in which my loan is supposedly "pooled" (and not simply
the name of the Trustee);

b.) the CUSIP number for the trust; and

c.) the specific date my loan was sold into said trust.

2.) Please provide a certified copy of my promissory note <u>in its current condition</u> showing <u>all</u> endorsements and/or allonges that show that the purported "owner" of my loan maintains legal "holder in due course" status under M.G.L. c. 106, s. 3-302 as of today's date.

3.) Please fully identify the current holder of my mortgage by name, address and phone number.

    a. If my mortgage is a MERS-designated mortgage, please identify the principal for whom MERS purports to act and provide written proof of the authorization of MERS to act for the lender with respect to my mortgage;

    b. Please send me a MERS Summary Report, also referred to as a MERS Milestone Report showing me all transfers of servicing rights and beneficial interest rights;

    c. If my mortgage has been assigned to another person or entity at any time, please provide certified copies of each and every assignment of the mortgage and advise whether or not such assignment was recorded on the public land records;

    d. If my mortgage is a MERS designated mortgage, please confirm or deny whether my promissory note was sold separately from my mortgage obligation and identify;

        i. Each and every party that purchased my promissory note or any interest;

        ii. The date upon which any such purchase(s) took place;

        iii. The amount of consideration paid for my promissory note.

As you know, RESPA – as recently amended - requires written acknowledgement of the receipt of this QWR letter within five (5) days and a substantive response to the requested information within thirty (30) days. A failure to comply with this request may result in fines of up to $2,000.00 plus my attorney's fees and costs.

I hereby reserve any and all rights to make additional requests for information and to bring additional claims against any parties involved with my loan.

You are also advised hereunder that to the extent that you or the "owner" of my loan may allege to be protected by any applicable statute(s) of limitation(s) with regard to any claims I may have for violations of state or federal law under the loan above-referenced, including my ability to rescind the loan transaction under applicable law, that any such claims are alleged to not be fully "discoverable" until full documentation is provided hereunder. I therefore reserve all rights to any and all claims, including rescission, until examination of the documents can be completed.

Thank you for your prompt attention to this matter.

Sincerely,

John Manos

EXHIBITSp000062



**This page is part of your document - DO NOT DISCARD**



# 20121418140



**Recorded/Filed In Official Records**
**Recorder's Office, Los Angeles County,**
**California**

Pages:
0002

**09/20/12 AT 03:23PM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**LEADSHEET**



201209200970031

00006423007



004272573

**SEQ:**
**01**

**ERDS - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**

E13

EXHIBITSp000063



[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING
[AND WHEN RECORDED MAIL TO]
CitiMortgage, Inc.
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683



# CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR METROCITI MORTGAGE LLC D/B/A NO RED TAPE HOME LOAN, ITS SUCCESSORS AND ASSIGNS, WHOSE ADDRESS IS P.O. BOX 2026, FLINT, MI, 48501, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, without recourse, representation or warranty, together with all rights, title and interest secured thereby, all liens, and any rights due or to become due thereon to CITIMORTGAGE, INC., WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE, O'FALLON, MO 63368-2240 (800)283-7918, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Deed of Trust made by JOHN MANOS and recorded on 07/29/2003 as Instrument # 03 2161272, in Book , Page in the office of the LOS ANGELES County Recorder, CA.

IN WITNESS WHEREOF, this Assignment is executed this 10th day of September in the year 2012
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR METROCITI MORTGAGE LLC D/B/A NO RED TAPE HOME LOAN, ITS SUCCESSORS AND ASSIGNS

**KIMBERLY GOELZ     ASST. SECRETARY**

## ACKNOWLEDGEMENT

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 10th day of September in the year 2012, by KIMBERLY GOELZ as ASST. SECRETARY for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR METROCITI MORTGAGE LLC D/B/A NO RED TAPE HOME LOAN, ITS SUCCESSORS AND ASSIGNS, who, as such ASST. SECRETARY being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

**TONJA BURKETT - NOTARY PUBLIC**
**COMM EXPIRES: 08/01/2016**

Tonja Burkett
Notary Public State of Florida
My Commission # EE 221272
Expires August 1, 2016

Prepared By: E.Lance/NTC, 2100 Alt 19 North, Palm Harbor, FL 34683 (800)346-9152
CMAVR 17429791. MERS MOM MIN 100034200001586712 MERS PHONE 1-888-679-MERS EFRMCA1

*17429791*

EXHIBITSp000064



This is a true and certified copy of the record if it bears the seal, imprinted in purple ink, of the Registrar-Recorder/County Clerk

JUL 2 0 2015

Dean C. Logan, REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

**This page is part of your document - DO NOT DISCARD**





# 20150315292

Pages:
0002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/24/15 AT 11:08AM**

| | |
|---|---:|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**LEADSHEET**



201503242820067

00010317538



006714279

**SEQ:**
**01**

DAR - Mail (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

EXHIBITSp000066

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING, INC.

[AND WHEN RECORDED MAIL TO]
CitiMortgage, Inc.
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

CitiMortgage Loan No 0626382573
GreenTree Loan No 82827280



## CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, CITIMORTGAGE, INC.,WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE, O'FALLON, MO, 63368, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, without recourse, representation or warranty, together with all rights, title and interest secured thereby, all liens, and any rights due or to become due thereon to GREEN TREE SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS 7360 SOUTH KYRENE ROAD, T314, TEMPE, AZ 85283 (800)643-0202, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Deed of Trust made by JOHN MANOS and recorded on 07/29/2003 as Instrument # 03 2161272 in the office of the LOS ANGELES County Recorder, CA.

Dated on ___/___/2015 (MM/DD/YYYY)
CITIMORTGAGE, INC.

By: _____
Samantha Cobb
VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

## ACKNOWLEDGEMENT

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on ___/___/2015 (MM/DD/YYYY), by Samantha Cobb as VICE PRESIDENT of CITIMORTGAGE, INC., who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
Nicole Baldwin EE 222285
Notary Public - State of FLORIDA
Commission expires: 08/05/2016

Nicole Baldwin
Notary Public State of Florida
My Commission # EE 222285
Expires August 5, 2016

Document Prepared By: E.Lauce/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
CMOAV 22534587 -- MSR-2015-02-01-GRNTR   DOCR T2515023608  [C-1] FRMCA1

*D0009543675*



This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

JUL 2 0 2015

Dean C. Logan REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

This page is part of your document - DO NOT DISCARD



# 20160062787



**Pages: 0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

## 01/20/16 AT 08:00AM

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**LEADSHEET**



201601203340020

00011615623



007334402

**SEQ:
01**

ERDS - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

*E634681*



8609420 LD
EXHIBITSp000069

RECORDING REQUESTED BY:

First American Mortgage Solutions

WHEN RECORDED MAIL TO:

TRUSTEE CORPS
17100 Gillette Ave.
Irvine, CA 92614

APN: 2055-018-022                    TS No: CA05001830-15-1                    TO No: 8609420

## SUBSTITUTION OF TRUSTEE

WHEREAS, JOHN MANOS, AN UNMARRIED MAN, was the original Trustor(s), FIDELITY NATIONAL LOAN PORTFOLIO SOLUTIONS was the original Trustee and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for METROCITI MORTGAGE LLC DBA NO RED TAPE HOME LOAN was the original Beneficiary under that certain Deed of Trust dated July 14, 2003 and recorded on July 29, 2003, as Instrument No. 03-2161272, of official records in the Office of the Recorder of Los Angeles County, California;

WHEREAS, the undersigned current Beneficiary, desires to substitute a new Trustee under said Deed of Trust in place of and instead of said original Trustee, or Successor Trustee, thereunder in the manner in said Deed of Trust provided;

NOW THEREFORE, **Ditech Financial LLC FKA Green Tree Servicing LLC** hereby substitutes **MTC Financial Inc. dba Trustee Corps**, whose address is 17100 Gillette Ave, Irvine, CA 92614, as Trustee under said Deed of Trust.

Dated: 1/11/16

**Ditech Financial LLC FKA Green Tree Servicing LLC**

By: Lori Hennessey, Foreclosure Supervisor

STATE OF ARIZONA
COUNTY OF MARICOPA

The foregoing instrument was acknowledged before me this ____ day of _____, 2016 by Lori Hennessey, Foreclosure Supervisor of Ditech Financial LLC FKA Green Tree Servicing LLC, a Delaware Limited Liability Company, on behalf of the Company.

Notary for State of Arizona
#
Commission expires

ADRIANA IRENE ROMERO
Notary Public - Arizona
Maricopa County
My Commission Expires
May 2, 2017

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

APR 2 7 2016

Dean C. Logan  REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

EXHIBITSp000071