**Fannie Mae Single Family/2002 Selling Guide/Part I: Lender Relationships (06/30/02)/I, Chapter 2: Contractual Relationship (06/30/02)/I, 201: Mortgage Selling and Servicing Contract (06/30/02)/I, 201: Mortgage Selling and Servicing Contract (06/30/02)**

## I, 201: Mortgage Selling and Servicing Contract (06/30/02)

The Mortgage Selling and Servicing Contract establishes the basic legal relationship between a lender and Fannie Mae. Specifically, it

- establishes the lender as an approved seller of mortgages and participation interests in mortgages to us;
- provides the terms and conditions of those sales;
- establishes the lender as an approved servicer of mortgages we have purchased for our portfolio, pools of mortgages in which we have purchased a participation interest for our portfolio, and pools of whole mortgages or participation interests that we have securitized to back an MBS issue;
- provides the terms and conditions for servicing; and
- incorporates by reference the terms of the Selling Guide, the Servicing Guide, and the Multifamily Guide(s).

The Contract also states the types of mortgages the lender may sell and service for us.

All of our lender communications—such as guides, announcements, and letters to lenders (regardless of the medium through which they are issued)—are instructions we provide to enable a lender to perform (as an independent contractor) its obligations to Fannie Mae (as a secondary market investor) under the terms of the Mortgage Selling and Servicing Contract. No borrower or other third party is intended to be a legal beneficiary of the Mortgage Selling and Servicing Contract or to obtain any such rights or entitlements through our lender communications.

**Fannie Mae Single Family/2002 Selling Guide/Part I: Lender Relationships (06/30/02)/I, Chapter 2: Contractual Relationship (06/30/02)/I, 201: Mortgage Selling and Servicing Contract (06/30/02)/I, 201.01: Lender's Basic Duties and Responsibilities (06/30/02)**

## I, 201.01: Lender's Basic Duties and Responsibilities (06/30/02)

A lender performs its origination and selling functions and its servicing obligations under the Contract as an independent contractor, not as an agent or representative of Fannie Mae. We expect a lender to use sound business judgment in all aspects of its operations; therefore, we do not establish specific requirements regarding the adequacy of the lender's staff or facilities. Our principal concern is that the lender have adequate staff and facilities to originate and sell quality mortgages; to protect against fraud, misrepresentation, or negligence by any parties involved in the mortgage origination and servicing processes; and to provide borrowers with assistance when it is requested.

Our basic philosophy of mortgage lending or servicing does not change on the basis of our lien position or whether we purchase a mortgage for our portfolio as a whole mortgage or a participation pool mortgage, or whether we securitize a mortgage (or a participation interest in a mortgage) in an MBS pool. We require the lender to originate and service all mortgages in a sound, businesslike manner; to use good judgment; and to follow the procedures in this Guide and the Servicing Guide.

A lender may use third parties to completely or partially originate, process, underwrite, close, fund, or package the mortgages it delivers to us. However, before entering into an agreement with a third-party originator, the lender should satisfy itself that the third-party originator is capable of producing quality mortgages. To assure that its staff (and any third party originators it uses) are

EXHIBITSp000071

knowledgeable about the various aspects of its mortgage origination and selling policies, the lender should have fully documented written procedures and should implement measures (such as periodic reviews of mortgage originations) to determine that those procedures are operational.

We have delegated responsibility for underwriting decisions to each lender with which we do business. The lender is responsible for ensuring that the mortgages and participation interests it sells to us meet our eligibility requirements. We developed Desktop Underwriter to enable lenders to underwrite mortgages faster and more accurately than ever before. Lenders may use Desktop Underwriter or they may manually underwrite mortgages by following the underwriting guidelines included in this Guide. We will also consider purchasing mortgages that a lender underwrites based on its own underwriting criteria (which may or may not include an automated underwriting system). However, if the lender's underwriting criteria provide for higher pricing to compensate for the increased risk of borrowers who have blemished credit histories, we will not purchase the mortgages unless the lender's business practices include policies that are designed to avoid predatory lending practices. Regardless of the underwriting method a lender uses, the mortgages (or participation interests) delivered to us must conform to the eligibility requirements discussed throughout this Guide (to the extent that they have not been amended for mortgages submitted to Desktop Underwriter for evaluation).

A lender cannot transfer its responsibility for servicing Fannie Mae-owned or -securitized mortgages unless we approve the transfer. However, as discussed later in this Chapter, we do allow a lender to assign servicing concident with delivery of a mortgage or an MBS pool, to use subservicing arrangements, or to pledge its servicing rights under certain conditions. In performing its servicing duties, a lender must take whatever action is necessary to protect our interest in the security property, as long as it is authorized by the terms of the security instrument. More information about the overall nature of a lender's servicing responsibilities is presented in Part I, Chapter 2, of the Servicing Guide.

> **Fannie Mae Single Family/2002 Selling Guide/Part I: Lender Relationships (06/30/02)/I, Chapter 2: Contractual Relationship (06/30/02)/I, 201: Mortgage Selling and Servicing Contract (06/30/02)/I, 201.03: Nature of Mortgage Sale Transactions (06/30/02)**

## I, 201.03: Nature of Mortgage Sale Transactions (06/30/02)

Every mortgage sale transaction—including those that involve special lender obligations and regular servicing option MBS pool mortgages—is expressly intended (by both Fannie Mae and the lender) to be construed as the lender's sale of the mortgages and participation interests therein and not as the lender's pledge to secure a debt or another obligation. If, however—notwithstanding the lender's and Fannie Mae's intent—a court or other appropriate forum holds that the mortgages and participation interests included in such transactions are still the lender's property, then it is Fannie Mae's and the lender's express intent that the conveyance of the mortgages and participation interests be deemed

- a pledge by the lender to Fannie Mae of all related mortgages and all related mortgage participation interests to secure a debt or other obligation of the lender, and
- a grant by the lender to Fannie Mae of a first priority perfected security interest in the mortgages and participation interests.

Accordingly, for every mortgage sale transaction—including those involving special lender obligations, regular servicing option MBS pool mortgages, and cash deliveries subject to lender recourse—the lender grants to Fannie Mae a security interest in all of the lender's right, title, and interest in and to each of the mortgages and participation interests delivered, for the purpose of securing the lender's performance of all of its obligations under the transaction and under any applicable commitments, contracts, or other agreements relating to the transaction, including the payment of principal, interest, and other sums due to Fannie Mae under each mortgage and participation interest or certificate. The lender and Fannie Mae intend for the conveyance of all

EXHIBITSp000072

> Fannie Mae Single Family (308761) / 2002 Selling Guide / Part IV: Mortgage
> Documents (06/30/02) / IV, Chapter 2: Mortgage or Deed of Trust Notes
> (06/30/02) / IV, 204: Endorsement of the Note (06/30/02)

## IV, 204: Endorsement of the Note (06/30/02)

The originating lender must be the original payee on the note (even when MERS is named as nominee for the beneficiary in the security instrument). There should be an endorsement to each subsequent owner of the mortgage (unless one or more of the owners endorsed the note in blank). The last endorsement on the mortgage note should be that of the mortgage seller. The mortgage seller must endorse the mortgage note "in blank" and without recourse. An example of an "in blank" endorsement follows:

    PAY TO THE ORDER OF

    WITHOUT RECOURSE
    LENDER'S NAME

    (Authorized Signature)
    NAME OF AUTHORIZED SIGNER
    TITLE OF AUTHORIZED SIGNER

The endorsement generally must appear on the note; however, when there is not enough space available on the note, an allonge may be used for the endorsement, as long as that is acceptable practice in the jurisdiction in which the security property is located. When an allonge is used, both the allonge and the note must include references to the other document and the allonge must be permanently attached to the note. When a lender sells us a mortgage for which an allonge is used for the endorsement(s) to the note, it warrants that (1) the form and manner of the allonge used comply with all applicable state, local, or federal law governing the use of allonges and result in an enforceable and proper endorsement to the note; (2) the allonge is permanently affixed to the related note and clearly identifies the note by referencing at least the name of the borrower(s), the date of the note, the amount of the note, and the address of the security property; (3) the note clearly references the attached allonge; and (4) Fannie Mae's status as a "holder in due course" will not be impaired. The lender must further agree to indemnify us from any loss or damage we may incur as a result of the use of an allonge for the note endorsement(s).

The endorsement should be signed only by those persons specifically authorized to execute documents in the lender's behalf. We will accept a lender's facsimile endorsement of notes for those jurisdictions in which the lender has determined that such endorsements are valid and enforceable. A lender that chooses to use facsimile signatures to endorse notes must warrant that the endorsement is valid and enforceable in the jurisdiction(s) in which the security properties are located and must retain in its corporate records the following specific documentation authorizing the use of facsimile signatures:

- legal opinions related to the legality and enforceability of facsimile signatures for each jurisdiction in which the lender uses them;

- a resolution from the lender's Board of Directors authorizing specific officers to use facsimile signatures; stating that facsimile signatures will be a valid and binding act on the lender's part; and authorizing the lender's corporate secretary to certify the validity of the resolution, the names of the officers authorized to execute documents by using facsimile signatures, and the authenticity of specimen forms of facsimile signatures;

Fannie Mae Single Family (308761) / 2002 Selling Guide / Part IV: Mortgage Documents (06/30/02) / IV, Chapter 4: Mortgage Assignments (06/30/02) / IV, Chapter 4: Mortgage Assignments (06/30/02)

# IV, Chapter 4: Mortgage Assignments (06/30/02)

An assignment of the mortgage to Fannie Mae is required for any mortgage that is not registered with the Mortgage Electronic Registration System (MERS). If a mortgage is registered with MERS, the need for a mortgage assignment depends on whether or not the lender names MERS as nominee for the beneficiary in the security instrument or subsequently assigns the mortgage to MERS. When the lender names MERS as nominee for the beneficiary in the security instrument, no assignment of the mortgage is required.

We have developed standard assignment forms that a lender can use for assignments (both recorded and unrecorded) of mortgages that it submits to us for purchase or securitization. However, we do not require a lender to use our standard assignment forms. The standard multistate assignment forms should be printed in 10-point type on one side of an 8-1/2" X 11" page (although a lender may use an 8-1/2" X 14" page if more space is needed and the applicable jurisdiction accepts pages of that size). A lender may also alter the mortgage assignment forms to make any of our authorized changes. If the lender alters one of our forms in any other manner, the tagline identifying it as a Fannie Mae document may be retained—as long as the document includes a second tagline that indicates the name of the entity (the lender or a third party) that modified the document and the date of the modification. Exhibit 1 includes a list of our standard assignment forms.

Fannie Mae Single Family (308761) / 2002 Selling Guide / Part IV: Mortgage Documents (06/30/02) / IV, Chapter 4: Mortgage Assignments (06/30/02) / IV, 402: Assignment of Mortgage to Fannie Mae (05/19/95) / IV, 402: Assignment of Mortgage to Fannie Mae (05/19/95)

# IV, 402: Assignment of Mortgage to Fannie Mae (05/19/95)

For any mortgage that is not registered with MERS, we require the lender to prepare an assignment of the mortgage to Fannie Mae, although the assignment should not be recorded. If the mortgage seller is not going to service the mortgage, the unrecorded assignment to Fannie Mae must be executed by the mortgage servicer.

When a lender chooses not to use our standard assignment forms, the mortgage assignments that it prepares must show the assignee as Fannie Mae, and must not include a recitation that the assignment of the mortgage or lien is "without recourse." The assignment must be prepared in recordable form, but it should not be recorded. In general, recordable form is whatever form the local recorder's office requires. If state law does not specifically address the information required for recordation, the lender should include the following information in the assignment: (1) the date of execution, (2) the lender's name, (3) the borrower's name, (4) a legal description of the property, (5) recording information related to the mortgage—such as the deed book and page number or the instrument number, (6) the original mortgage amount, (7) the date of the mortgage, (8) an authorized signature, and (9) an appropriate notarization, if one is required by state law. If a jurisdiction requires that the assignee's address be shown in the mortgage assignment, the lender should use this address—Fannie Mae; Mail Drawer: Assignments; 3900 Wisconsin Avenue, NW; Washington, DC 20016.

EXHIBITSp000075

http://www.allregs.com/tpl/documentPrint.aspx?did3=a7e2f8322f6b499bae47cebd62ff3298  4/4/2009

Fannie Mae Single Family (308761) / 2002 Selling Guide / Part I: Lender Relationships (06/30/02) / I, Chapter 2: Contractual Relationship (06/30/02) / I, 203: Assignment of Servicing (06/30/02)

# I, 203: Assignment of Servicing (06/30/02)

When we purchase or securitize whole mortgages or participation pool mortgages, we allow a lender that does not want to service the mortgages to assign automatically the servicing of the mortgages to another Fannie Mae-approved lender that is approved to service the particular type of mortgages for which the servicing is being assigned. The lender notifies us of the assignment of servicing by designating the 9-digit lender identification number that Fannie Mae has assigned to the assignee servicer on the *Loan Schedule* (Form 1068 or 1069) or the *Schedule of Mortgages* (Form 2005) and, if required, by including in its delivery package mortgage assignments prepared in accordance with Part IV, Section 402, of this Guide.

The assignment of servicing should be documented by a separate contract between the lender and the assignee servicer, which provides (among other things) for the transfer of the servicing of the mortgages as of an effective date that is not later than the date we purchase the mortgages for our portfolio or the issue date for the MBS pool. (If the transfer of actual servicing responsibilities from the lender to the assignee servicer has not already taken place, but will become effective concurrent with our purchase or securitization of the mortgages, we expect the transfer to take place in accordance with the requirements for transfers of servicing that are included in Part I, Section 205, of the Servicing Guide.)

By accepting an assignment of servicing, the assignee servicer agrees to service the mortgages in accordance with all Fannie Mae requirements and assumes responsibility for all of the lender's contractual obligations related to the mortgages, including all selling warranties and any other liabilities that arise in connection with the origination of the mortgages or the servicing of the mortgages prior to the assignment of servicing. However, an assignment of servicing does not release the lender from any liabilities to Fannie Mae with respect to the mortgages or the servicing of them prior to the assignment of servicing. Both the lender and the assignee servicer will be jointly and severally liable to Fannie Mae for the obligations and liabilities related to the assigned mortgages.

We also allow a lender that is servicing the mortgages it delivers to us to use acceptable computer service bureaus or tax services to perform some of the servicing functions. However, we will hold the servicer fully accountable for any actions taken (or not taken when required) by these companies.



After we have purchased or securitized a mortgage (or a participation interest in one), all subsequent assignments of servicing related to that mortgage (or participation interest) must be approved by us before the servicing can be transferred.

EXHIBITSp000076

Fannie Mae Single Family (308761) / 2002 Selling Guide / Part IV: Mortgage Documents (06/30/02) / IV, Chapter 4: Mortgage Assignments (06/30/02) / IV, 403: Intervening Assignments (06/30/02)

# IV, 403: Intervening Assignments (06/30/02)

Our standard assignment forms are designed to be used for assignments of a mortgage to Fannie Mae; however, a lender may also use them for intervening assignments. In such cases, the lender must modify the following phrase in the first paragraph of the applicable assignment form: "...unto the Federal National Mortgage Association (or Fannie Mae, as applicable), a corporation organized and existing under the laws of the United States (herein "Assignee"), whose address is 3900 Wisconsin Avenue, NW, Washington, DC, 20016,..." to reflect the same applicable information for the designated assignee.

When the mortgage seller and the mortgage servicer are not the same entity, we require a recorded intervening assignment from the seller to the servicer—and then an assignment from the servicer to us (or MERS). To simplify the documentation for a transaction in which the mortgage will be serviced by the lender who originated it—but is being sold to us by another party who is an affiliate of the originating lender or an investment banker acting as a conduit—we will not require the mortgage seller to obtain intervening assignments from the originating lender to the mortgage seller and from the mortgage seller back to the originating lender (as the mortgage servicer). Instead, we will accept an assignment from the originating lender.

We require intervening assignments in most other instances in which the originating lender has transferred its interest in the mortgage to another party (with the exception of the special provision for Puerto Rico mortgages, as discussed in Section 402.02 above). An intervening assignment does not have to be recorded since we will rely on the lender's warranty and the chain of endorsements on the mortgage note to determine ownership of the mortgage. The lender may record these intervening assignments if it prefers to do so.

A lender must obtain all of the intervening assignments that we require, record them in any instance in which we require recordation, and retain them in the individual mortgage file to assure that there is evidence of the complete chain of ownership for the mortgage. Generally, each of the intervening assignments should have a corresponding endorsement on the mortgage note. However, this will not always be the case because of our policies that (1) allow the mortgage note to be endorsed "in blank," (2) require recordation of the assignment to the mortgage servicer when the mortgage seller does not service the mortgage (but do not require a corresponding note endorsement), (3) waive the requirement for intervening assignments when the mortgage originator services a mortgage that is sold to us by one of its affiliates or an investment banker acting as a conduit (but require all of the applicable note endorsements), and (4) permit the mortgage to be assigned to (and registered with) MERS.

If we experience delays or other problems in the foreclosure process or suffer any other loss because clear title to a property cannot be established due to the lender's failure to obtain, record (if applicable), and retain the necessary intervening assignments, we may ask the lender to "make us whole" for any costs that can be attributed to the delay or problem (by reimbursing us for additional attorney's fees, disallowed interest on the claim, etc.) or to repurchase the mortgage or the security property.

EXHIBITSp000077

Case 8:16-cv-01142-CJC-KES   Document 95-2   Filed 00/10/18   Page 8 of 10   Page ID #:2699

Fannie Mae Single Family (308761) / Mortgage Selling and Servicing Contract / V: Servicing Mortgages (07/05) / V, C: Ownership of Records (07/05)

## V, C: Ownership of Records (07/05)

All mortgage records reasonably required to document or properly service any mortgage we own in its entirety are our property at all times. This is true whether or not the Lender developed or originated them.

The following are considered mortgage records:

- all mortgage documents;
- tax receipts;
- insurance policies;
- insurance premium receipts;
- ledger sheets;
- payment records;
- insurance claim files and correspondence;
- foreclosure files and correspondence;
- current and historical data files; and
- all other papers and records.

1. **Lender As Custodian.** The mortgage records belong to us. The Lender can have possession of the mortgage records only with our approval, and the Lender is acting as our custodian. This is true whether the Lender receives the mortgage records from an outside source or prepares them itself.

2. **Delivery.** When we ask for any mortgage records in writing, the Lender will deliver them to us or someone we choose. The Lender must also send us a list that identifies each mortgage, and must give us other information we request to identify the mortgages delivered.

    We will not be required to sign or deliver any trust receipts before the Lender delivers the mortgage records we have requested.

    If we ask the Lender in writing for reproductions of any mortgage records the Lender microfilmed or condensed, the Lender will reproduce them promptly at no cost to us or the party to whom we want them delivered.

3. **Joint Ownership.** If we own a participation interest in a mortgage, the other owners and we own the mortgage records jointly. For these mortgages, the Lender possesses the mortgage records as a custodian for the joint owners.

    If we ask for copies of the mortgage records and servicing information about any such mortgages, the Lender will furnish them. Or, if we need any mortgage records for legal

> Fannie Mae Single Family / Servicing Guide / 2014 and Prior Servicing Guides / 2006 Servicing Guide / Part VIII: Foreclosures, Conveyances, and Claims / VIII, Chapter 1: Foreclosures (01/31/03) / VIII, 102: Initiation of Foreclosure Proceedings (09/30/05) / VIII, 102: Initiation of Foreclosure Proceedings (09/30/05)

## VIII, 102: Initiation of Foreclosure Proceedings (09/30/05)

See Part VIII of the 2010 Servicing Guide

Generally, foreclosure proceedings for a first mortgage can begin whenever at least three full monthly installments are past due. Foreclosure proceedings may begin at once for any mortgage if the borrower is not eligible for relief from foreclosure under the Servicemembers Civil Relief Act (or any state law that similarly restricts the right to foreclose) and the property has been abandoned or vacated by the borrower and it is apparent that the borrower does not intend to make the mortgage payments. In addition, foreclosure proceedings for any mortgage may be started immediately if

- the borrower was advised in writing of the relief provisions that were available and his or her written response indicated a lack of interest in the mortgage obligation (or gave permission for the commencement of foreclosure proceedings, if the borrower was subject to the provisions of the Servicemembers Civil Relief Act or any state law that similarly restricts the right to foreclose); or

- income from rental of the property is not being applied to the mortgage payments and arrangements cannot be made to apply it, and it has been established that the borrower is not eligible for relief under the Servicemembers Civil Relief Act or any state law that similarly restricts the right to foreclose. (also see *Part III, Chapter 1, Exhibit 1*)

We require a servicer to contact its servicing consultant or servicing specialist in its lead Fannie Mae regional office before it initiates foreclosure proceedings for an eMortgage. If the security property is located in a state in which we have Fannie Mae-retained attorneys (or trustees), the servicer must use one of the firms we have retained for the state. If we do not have any Fannie Mae-retained attorneys (or trustees) designated for the state in which the security property is located, the servicer may retain its own attorney, but we will require that attorney to work closely with an attorney that we designate.

Foreclosure proceedings for a second mortgage can begin when at least two full monthly installments are past due. As long as the servicer has complied with the requirements of the Servicemembers Civil Relief Act and any state law that restricts the right to foreclose, it can start foreclosure proceedings for a second mortgage immediately if the first mortgage is in default and the second mortgage instrument includes a provision that the second mortgage will be considered in default, regardless of the status of its payments, if the first mortgage is in default.

Fannie Mae is at all times the owner of the mortgage note, whether the note is in our portfolio or whether we own it as trustee for an MBS trust. In addition, Fannie Mae at all times has possession of and is the holder of the mortgage note, except in the limited circumstances expressly described below. We may have direct possession of the note or a custodian may have custody of the note for us. If we possess the note through a document custodian, the document custodian has custody of the note for our exclusive use and benefit.

In most cases, a servicer will have a copy of the mortgage note that it can use to begin the foreclosure process. However, some jurisdictions require that the servicer produce the original note before or shortly after initiating foreclosure proceedings. If our possession of the note is direct because the custody documents are at our document delivery facility, to obtain the note and any other custody documents that are needed, the servicer should submit a request to our Custody Department through the Loan Document Request System (LDRS) on our Web site (www.efanniemae.com). If we possess the note through a document custodian that has custody of those documents for us, to obtain the note and any other custody documents that are needed, the servicer should submit a *Request for Release/Return of Documents* (Form 2009) to our custodian.

EXHIBITSp000079

In either case, the servicer should specify whether the original note is required or whether the request is for a copy.

In some jurisdictions, only the "holder" of the note may conduct a foreclosure. In any jurisdiction in which our servicer must be the holder of the note in order to conduct the foreclosure, we temporarily transfer our possession of the note to our servicer, effective automatically and immediately before commencement of the foreclosure proceedings. When we transfer our possession, our servicer becomes the holder of the note during the foreclosure proceedings. If the borrower reinstates the loan or the servicer ceases to service the loan for Fannie Mae for any reason, then possession of the note at that time automatically reverts to Fannie Mae and the note must be returned to the document custodian. At that time, Fannie Mae also resumes being the holder, just as it was before the foreclosure proceedings. The transfer of our possession, and any reversion of possession to us, are evidenced and memorialized by our publication of this paragraph. This Guide provision may be relied upon by a court to establish that the servicer conducting the foreclosure proceeding has possession, and is the holder, of the note during the foreclosure proceeding, unless the court is otherwise notified by Fannie Mae.

EXHIBITSp000080